**MOOSE COAL COMPANY, Plaintiff,**

v.

**William P. CLARK, Secretary, United States Department of the Interior, and the United States Department of the Interior, Defendants.**

Civ. A. No. 84–0185–B.

United States District Court,
W.D. Virginia,
Big Stone Cap Division.

June 8, 1988.

Elsey Harris, Norton, Va., for plaintiff.

Jerry Kilgore, Asst. U.S. Atty., Abingdon, Va., Elizabeth Tonkin, Dept. of Interior, Knoxville, Tenn., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on a complaint filed by Moose Coal Company, Inc. ("Moose") seeking a permanent injunction of a cessation order issued by the Office of Surface Mining Reclamation and Enforcement ("OSM"). The Interior Board of Land Appeals ("Board") directed OSM to issue the Order pursuant to the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201–1328 (1986). Jurisdiction of the court is based upon 30 U.S.C. § 1276(a)(2), (c) (1986). Under Section 1276(b), the court must hear the complaint solely on the record before the Secretary and the Secretary's findings, if supported by substantial evidence on the record considered as a whole, shall be conclusive. For the reasons stated herein, the court is of the opinion that the Secretary's findings, as represented by the Board's decision, are not supported by substantial evidence and accordingly, the court will vacate the cessation order. This is not the end of this case, however, since the Secretary has filed a counterclaim founding jurisdiction upon 30 U.S.C. § 1271(c) (1986). The Secretary has asked for injunctive relief prohibiting Moose from further violating the act or failing to comply with orders issued by the Secretary. The court has the authority pursuant to Sections 1271(c) and 1276(b) to modify the Board's decision and to issue appropriate and equitable relief to both the plaintiff and the defendants. Accordingly, the court will proceed to adjudicate the dispute.

Finally, the court should note that, to its knowledge, Moose has exhausted its administrative remedies. Although the defendants asserted in their Answer that Moose had not exhausted administrative remedies, neither party has briefed the issue. Moreover, in light of the case's extensive administrative procedural history, the court feels that further pursuit of administrative remedies would be a futile gesture.

## HISTORY OF THE CASE

The administrative proceedings leading up to this suit are lengthy and complicated because both the Commonwealth of Virginia and OSM have acted, and failed to act, as to several matters. The July 10, 1984 Opinion of Chief Administrative Law Judge Horton furnishes a relatively accurate description of the various administrative proceedings. His opinion is the aforementioned decision of the Office of Hearings and Appeals, Interior Board of Land Appeals, a branch of the United States Department of the Interior, Arlington, Virginia. In addition, the Secretary has offered in support of the counterclaim the affidavit of Earl D. Bandy, Jr., a reclamation specialist with OSM. This affidavit also outlines the history of the case. In view of the complexity involved, the court will relate only the essential history of this case, emphasizing those portions that the court finds most significant in arriving at its decision.

On March 17, 1980, Moose was issued Interim Permit Number 3140, located in Wise County, Virginia. Moose then began

operating its mine and was legally doing so pursuant to the Interim Permit. On December 16, 1981, the Commonwealth of Virginia, Division of Mined Land Reclamation ("DMLR") became the primary regulatory authority in Virginia for all surface coal mining and reclamation operations. The DMLR adopted and implemented a phased submittal program for filing permanent program surface coal mining permit applications. Pursuant to this program, it required Moose to submit the first phase of its application by February 3, 1982, the second phase by April 3, 1982, and the third phase by July 3, 1982. Virginia regulations required that in order for a person to continue to operate a surface coal mine under an interim permit, he must make a timely and complete permit application under the permanent program requirements. Moose complied with the deadlines. Upon concluding its initial review, DMLR returned the application for corrections on December 30, 1982 due to certain deficiencies. Moose resubmitted its application to DMLR on February 28, 1983 and the DMLR again noted deficiencies. DMLR then ruled on March 25, 1983 that Moose had failed to comply and denied the petition for a permanent program permit. Moose appealed this decision. On April 8, 1983, a state hearing officer ruled that Moose was entitled to a third review and allowed it until May 25, 1983 in which to submit a timely and complete application. By letter dated April 19, 1983, the DMLR requested a reconsideration of the hearing officer's opinion. The hearing officer denied this request on April 25, 1983. The Commonwealth of Virginia was entitled to appeal this decision. By letter dated May 3, 1983, however, Danny R. Brown, Commissioner of the DMLR for the Commonwealth of Virginia, advised the hearing officer that "[a]fter careful consideration regarding this particular case, I have decided not to continue the administrative review process, and will accept your decision." The hearing officer's unappealed ruling therefore constitutes a final decision on this matter. On May 25, 1983, Moose submitted a third application in accordance with the ruling of the state hearing officer. Shortly there-

after, Moose concluded its mine operations. Having no further need for the permanent program permit, it withdrew its application on June 15, 1983.

Meanwhile, on March 16, 1983, Virginia Citizens for Better Reclamation ("VCBR") filed a citizens complaint pursuant to 30 C.F.R. § 842.12 on behalf of Virginia D. Hill. VCBR alleged that Moose had not filed a complete application and was therefore conducting surface mining operations in violation of Virginia's permanent program regulations. OSM investigated Moose in cooperation with DMLR. Although Moose contends that this investigation lead to DMLR's decision on March 25, 1983 to deny Moose's application, the Secretary denies this allegation. OSM released its report on March 29, 1983. Following the April 8, 1983 decision of the state hearing officer allowing a third review, VCBR requested on April 11, 1983 an informal review, pursuant to 30 C.F.R. § 842.15, of OSM's action on its citizen's complaint. On May 17, 1983, the OSM field officer deferred to the state hearing officer's ruling and decided that further enforcement action was not necessary or appropriate at that time. VCBR then appealed the field officer's decision. By letter dated June 16, 1983, DMLR advised VCBR that it was allowing Moose to conclude its reclamation activities under its interim permit.

On July 10, 1984, the Interior Board of Land Appeals reversed the OSM field officer's May 17, 1983 decision. It found that Moose's mining activities after August 15, 1982 were conducted without a valid permit. It therefore ordered OSM to issue a cessation order, assess a civil penalty, and order Moose to reapply for a permanent program permit if OSM determined that it was still engaged in mining or reclamation operations at the site in question. Finally, it required OSM to ensure that Moose's reclamation operations satisfied the performance standards of the Virginia permanent program regulations.

The Board reached its decision by observing that Virginia's mining regulations conditioned a person's authority under an in-

terim permit to continue surface coal mining and reclamation activities after August 15, 1982 on that person's filing of a timely and complete application for a permanent program permit. Moose did not submit blasting information until September 17, 1982 and DMLR returned Moose's application on December 30, 1982 for "numerous deficiencies." Accordingly, the Board concluded that Moose did not file a "materially *complete* application" by August 15, 1982 and that any operations after that date were conducted without a valid permit. The Board then opined that the state hearing officer's determination that Moose was entitled to a third review ignored the requirement that the application be timely and complete. Finally, it reversed the OSM field officer's decision to refrain from further enforcement because his acquiescence in the state hearing officer's decision was contrary to OSM's oversight enforcement responsibilities pursuant to 30 C.F.R. Parts 842 and 843 because the state regulatory action was not "appropriate."

In accordance with the Board's decision, on September 17, 1984 OSM served Moose with Cessation Order Number 84–13–292–004, ordering Moose to cease all surface coal mining and reclamation operations and to submit a permanent program application by October 30, 1984. In the cessation order itself, the inspector states in the narrative section that an inspection was held on September 6, 1984 by Earl Bandy, Jr. He reported that the area "has been backfilled, graded and seeded" and that the operator wished to retain one of the sediment ponds as a permanent improvement and to use a portion of the reclaimed area for the storage of oil tanks. He further reported that the revegetation was "proceeding well but some areas may require additional seeding this fall." Although the box on the cessation order that states that the condition, practice, or violation is causing or may cause significant, imminent environmental harm was checked, it is interesting to note that the narrative concluded that "[n]o violations were observed during this field visit."

## ANALYSIS AND DECISION

■ The court believes that the Board's decision is not supported by substantial evidence. It is obvious from reading the opinion that the Board made its decision based upon an incomplete record. This is because Moose had no opportunity to be heard at the hearing. The Secretary admits that Moose was not served with a copy of VCBR's Notice of Appeal to the Board. Moreover, the Board's opinion indicates that the only parties present at the hearing were VCBR, and Virginia D. Hill, represented by an attorney for VCBR and OSM, represented by an attorney from the Office of the Field Solicitor, Department of the Interior, Knoxville, Tennessee. It is important to note that the Board's decision is diametrically opposed to the April 8, 1983 finding of the state hearing officer. The state hearing officer, who heard all sides of the controversy, found that Moose made a "substantial improvement" in its application for a permanent program permit and that according to DMLR's "past policies, procedures and publications" Moose was entitled to a third review. It is doubtful that he would have reached this decision if he thought that Moose's application had not been timely and complete. The Board, however, found that Moose was not entitled to a third review because it had not timely completed the permit applications. Although the decision of the federal agency is directly opposite to that of the state agency, Moose was not present at the federal hearing and had no opportunity to be heard. When only one side of a controversy is afforded an opportunity to be heard, it is easy to find evidence to support the attesting party's position and to reach a one-sided decision. By not hearing Moose's version of the story, the Board reached a decision that was not based on substantial evidence.

Moreover, 43 C.F.R. § 4.1283 requires the appellant, in this case, Virginia Hill and VCBR, to serve a copy of the notice of appeal and other documents "on each party" within 15 days of filing the notice. Again, the Secretary acknowledges this requirement and the fact that Moose was not so served, however, it states in its Re-

sponse to Request for Admissions that "the question of whether Moose was a 'party' and should have been so served calls for a legal conclusion." The court concludes that Moose was a party and should have been served notice.

A pertinent discussion of "parties" is found in 43 C.F.R. § 4.1105. This section specifies which persons are to be considered statutory parties and which persons have the right to intervene in an administrative review proceeding as a party. Unfortunately, each subsection refers specifically to proceedings under Sections 4.1150, 4.1160, 4.1180, 4.1190 or 4.1200. The section also states that anyone else claiming to be a party may petition to intervene. The Board decision at issue, pursuant to 30 C.F.R. § 842.15(d), proceeded under 43 CFR § 4.1281, "Appeals to the Board from Decisions of the Office of Surface Mining." Accordingly, it is not clear what persons are parties under the avenue of appeal pursued by VCBR. Nevertheless, the court feels that the entity whose fate is being decided, in this case Moose, should certainly be considered a party or otherwise be afforded notice. First of all, the commonly understood meaning of "party" clearly applies in this instance. The subject matter of the appeal concerns Moose and Moose is the entity most definitely affected by the Board's decision. Secondly, 43 C.F.R. § 4.1281 states that "[a]ny person who is or may be adversely affected by a written decision of the Director of OSM or his delegate may appeal to the Board where the decision specifically grants such right of appeal." According to 30 C.F.R. § 842.15(d), an informal review, such as that sought by VCBR, is an OSM decision within the meaning of 43 C.F.R. § 4.1281 and "shall contain a right of appeal." It would make little sense to afford Moose an opportunity to appeal under these sections, as a person who "may be adversely affected" by the informal review, and yet, by refusing notice, effectively preclude it from defending itself if another "affected" person instigates the appeal. Finally, 30 C.F.R. § 842.15(b) states that the "person alleged to be in violation shall also be given a copy of the results of the

[informal] review" from which a person can appeal pursuant to Section 842.15(d). Why would the regulations afford the alleged violator a copy of the informal review and yet not mandate informing him if someone appeals that review? For these reasons, the court concludes that Moose was a party within the meaning of 43 C.F.R. § 4.1283 and should have received notice of the appeal. Because Moose did not receive notice as required by Section 4.1283, the court is of the opinion that the Board's decision is arbitrary and capricious and not based upon substantial evidence.

As previously noted, the cessation order narrative states that "no violations were observed during this field visit." The evidence of OSM's own inspector, therefore, is that there was no danger to the public health or safety nor was there any danger of causing significant or eminent environmental harm to land, air or water resources. In other words, nothing was wrong with the reclamation except that in due time, additional seeding might be required. Under the interim permit issued by DMLR, Moose was required to post bond to ensure that the reclamation was completed pursuant to the state regulations. Effective December 29, 1986, however, DMLR released all bonds on Interim Permit Number 3140. If Moose had obtained a permanent permit, it would have been required to continue the bond in effect until at least the latter part of 1988. This court finds, therefore, that Moose escaped the expense of the application for a permit under the permanent program and has also escaped the more stringent bonding requirements of the permanent program.

■ For the aforementioned reasons, the defendants are enjoined from proceeding in any way with the cessation order and it is deemed null and void. The government should not be deemed without remedy, however. Moose has been able to escape the permanent program reclamation requirements by simply dropping its application. Although the Secretary does not seek a ruling requiring Moose to now obtain a permanent program permit, it has

moved the court to either uphold the notice of violation, to remand the case back to the Secretary, or to uphold the notice of violation and require a reclamation bond. Acting upon the defendants' counterclaim therefore, the court believes that it should grant a remedy to OSM to ensure that Moose complies with the permanent reclamation program requirements. Accordingly, it is hereby ADJUDGED and ORDERED that Moose shall immediately proceed to post bond in the sum of $10,000.00 conditioned upon completion of reclamation satisfactory to an inspection by authorized inspectors of OSM. Because time has been lost under this proceeding, it is ORDERED that the bond shall remain in effect until OSM has seen fit to authorize its release. Moose shall post said bond within fifteen (15) days following the entry of the final order in this case.

The court is of the opinion that this Order is in accordance with the spirit of the Board's July 10, 1984 decision which concluded by stating as follows: "In any event, OSM shall ensure that Moose Coal's reclamation operations have satisfied the performance standards of Virginia's permanent program regulations and that the operations are covered by a bond amount calculated in accordance with Virginia's applicable permanent program regulations." The defendant's brief suggested a bond in the amount of $10,000.00.

### ORDER

In accordance with a Memorandum Opinion entered this date, the defendants are permanently enjoined from enforcing Cessation Order Number 84–13–292–004 against Moose Coal Company, Inc. Summary judgment is therefore granted to the plaintiff on its complaint, however, summary judgment is granted in part to the defendants on their counterclaim. The plaintiff is hereby ORDERED to proceed to reclaim the land which is the subject of this lawsuit in accordance with the permanent regulations of the Virginia surface mining program and subject to the approval of the Office of Surface Mining Reclamation and Enforcement. The plaintiff is hereby ORDERED to post bond in the amount of $10,000.00 to carry out said reclamation within fifteen (15) days following the entry of this Order. The bond shall remain in effect until OSM has seen fit to authorize its release.

Nothing further remaining to be done in this cause, it is hereby stricken from the docket.