**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONALD G. EBERHARDT,
Plaintiff-Appellee,

and

UNITED STATES OF AMERICA, ex rel,
Intervenor-Plaintiff,

No. 97-2522

v.

INTEGRATED DESIGN & CONSTRUCTION,
INCORPORATED; ALBERT H.
MCCOUBREY, III,
Defendants-Appellants.

RONALD G. EBERHARDT,
Plaintiff-Appellant,

and

UNITED STATES OF AMERICA, ex rel,
Intervenor-Plaintiff,

No. 98-1034

v.

INTEGRATED DESIGN & CONSTRUCTION,
INCORPORATED; ALBERT H.
MCCOUBREY, III,
Defendants-Appellees.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1423-A)

Argued: December 3, 1998

Decided: February 10, 1999

Before MURNAGHAN and MICHAEL, Circuit Judges, and
HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Herlong wrote the opinion, in which Judge Murnaghan and
Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** David Thomas Ralston, Jr., HOPKINS & SUTTER,
Washington, D.C., for Appellants. Stephen R. Smith, KUTAK
ROCK, Washington, D.C., for Appellee. **ON BRIEF:**  Karen Marie
Grane, HOPKINS & SUTTER, Washington, D.C., for Appellants.
Allen S. Rugg, KUTAK ROCK, Washington, D.C., for Appellee.

_____

**OPINION**

HERLONG, District Judge:

In 1996, Ronald G. Eberhardt ("Eberhardt") brought a qui tam
action under 31 U.S.C.A. § 3730(b)(1) (West 1983 & Supp. 1998)
against his former employer, Integrated Design & Construction, Inc.
("IDC"), and its majority owner, Albert H. McCoubrey
("McCoubrey"), for falsely billing the government in violation of the
False Claims Act, 31 U.S.C.A. § 3729 (West 1983 & Supp. 1998).
Eberhardt also claimed that IDC discriminated against him by
decreasing his salary, demoting him, and terminating him -- in viola-
tion of 31 U.S.C.A. § 3730(h) (West Supp. 1998) -- for acts he took
in furtherance of a qui tam action.

On October 2, 1996, the United States intervened as to the section
3729(b)(1) count and ultimately settled this claim on January 7, 1997.
Eberhardt's discrimination claim proceeded to trial. On July 15, 1997,
Eberhardt received a jury verdict in his favor of $417,700.99, and the

2

district court entered a judgment on the verdict. On July 24, 1997, Eberhardt filed a motion for reinstatement and interest. On July 29, 1997, IDC filed a motion for judgment as a matter of law or, in the alternative, motion for new trial under Rules 50 and 59 of the Federal Rules of Civil Procedure. On September 22, 1997, IDC and McCoubrey filed a joint Rule 60(b) motion as well as separate Rule 60(b) motions for relief from the judgment.

On October 3, 1997, the district court denied IDC's motion for judgment as a matter of law or, in the alternative, motion for new trial. On November 21, 1997, the district court granted Eberhardt's motion for prejudgment interest on the back pay award, denied reinstatement to Eberhardt, dismissed McCoubrey from the action pursuant to his Rule 60(b) motion, denied all other Rule 60(b) motions, and confirmed the denial of the Rule 50/59 motion. IDC and Eberhardt now appeal. Because the district court accurately considered and applied the relevant law, this court finds no reason for reversal of the district court's decisions, with the exception of its decision to grant McCoubrey relief from the judgment. Accordingly, we reverse the trial court's grant of McCoubrey's Rule 60(b) motion and affirm in all remaining respects.

I.

IDC was an architectural/engineering/construction firm which managed the design and construction of embassy facilities for the United States Department of State ("State Department"). IDC essentially acted as a conduit between the Government and subcontractors, invoicing the Government for subcontractors' work plus IDC's administrative costs ("pass-through contracts"). McCoubrey was IDC's President, CEO, and 90% shareholder. IDC hired Eberhardt in January 1994 as Director of Congressional and Governmental Affairs.

Eberhardt was promoted to Senior Staff Vice President on July 13, 1994, and he initiated an effort to organize IDC's accounting system and records. In late July 1994, IDC's then-CFO and in-house counsel, William Roemer ("Roemer"), who was responsible for administering IDC's pass-through contracts, informed Eberhardt that IDC had invoiced the State Department on uncompleted work in order to alleviate its cash flow problems. Roemer also told Eberhardt that McCou-

brey knew of the billings. Eberhardt went to McCoubrey with this information, and McCoubrey stated that he would speak with Roemer. Eberhardt discovered more information supporting Roemer's claims and discussed the issue further with McCoubrey. In October 1994, they agreed to have a senior employee, Pascal Pittman ("Pittman"), review the contracts in question. Pittman reported to Eberhardt that $1.3 million in advance billings had taken place. IDC did not have these funds in its bank accounts and was facing a severe shortage in cash flow. Roemer became a focus of IDC's investigation, but he refused to cooperate and was terminated.

In December 1994, Eberhardt informed McCoubrey that there was an appearance of criminality, and he advised McCoubrey that IDC should obtain legal counsel. The next day, McCoubrey ordered Eberhardt to lead an official investigation with the aid of corporate counsel Mark Kellogg ("Kellogg") and to submit a written report which was to be presented to the Board of Directors and ultimately forwarded to the federal government. The investigation continued until January 9, 1995, at which point Eberhardt submitted a written report revealing that the money from the advanced billings had been received and spent, creating a significant cash flow problem. During the course of the investigation, Eberhardt discovered that McCoubrey had personally signed the invoices, and he advised McCoubrey to obtain separate counsel. He also issued a set of questions to McCoubrey asking about McCoubrey's involvement in the scheme. Over the course of the investigation, Eberhardt's previous close relationship with McCoubrey deteriorated significantly, and McCoubrey excluded Eberhardt from closed door meetings.

On January 16, 1995, McCoubrey directed Eberhardt to return to his normal tasks and to monitor IDC's financial condition, but he allegedly issued a separate order for Eberhardt to no longer have access to any IDC financial information. On January 20, 1995, IDC officials met with the State Department and disclosed the advance billings. Eberhardt was excluded from this meeting. On January 30, 1995, Eberhardt reported to the board of directors that IDC had discharged its duty to report to the government and that he was disbanding the investigation.

On February 1, 1995, IDC implemented a plan to alleviate its cash flow problems, cutting the salaries of all senior staff employees by fif-

4

teen percent. An exception was made for the two lowest salaried senior employees, at their request, and they received ten percent cuts. In all, four employees (including Eberhardt) received a fifteen percent cut, and two received a ten percent cut. On February 7, 1995, IDC implemented a corporate reorganization, whereby it laid off two architects, formed an Executive Committee, and eliminated Eberhardt's position of Senior Staff Vice President, allegedly due to McCoubrey's increased involvement with the company. Eberhardt was tasked for business development, a job which Eberhardt felt was outside his expertise. In addition, on February 9, 1995, McCoubrey gave Eberhardt the special task of drafting IDC's 1995 comprehensive business plan/budget -- an assignment for which Eberhardt felt unqualified.

Eberhardt responded by memorandum that same day, stating that he was being singled out for leading the investigation, that he was pretextually being put in an impossible predicament, and that IDC's actions were a violation of the Federal Whistleblower Protection Act. In a February 13, 1995, memorandum, McCoubrey denied these claims. Eberhardt responded by memorandum that same day that he was protected by the False Claims Act. That same day he also told Kellogg (IDC's corporate counsel) of his intention to bring a qui tam action. On February 16, 1995, Eberhardt met with the Board of Directors and informed them of his intention to file suit against IDC under the False Claims Act. He declined to perform his newly assigned duties, and the Board fired him. Eberhardt then went to the FBI to advise it of evidence stored at IDC that could be relevant to an investigation of False Claim Act violations.

II.

31 U.S.C.A. § 3729 creates liability for any person who presents false claims to the federal government for payment. Section 3730 allows a private person to bring a civil action on behalf of the Government for violations of section 3729 (i.e., a"qui tam action"). Section 3730(h) -- sometimes called the "whistleblower" provision of the False Claims Act -- "prevents the harassment, retaliation, or threatening of employees who assist in or bring qui tam actions." Zahodnick v. IBM Corp., 135 F.3d 911, 914 (4th Cir. 1997). It provides:

5

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C.A. § 3730(h). This court has previously spoken to the issues relevant to the instant case. In Zahodnick, this court extracted three elements from section 3730(h) that constitute a prima facie case: "[A]n employee must prove that (1) he took acts in furtherance of a qui tam suit [i.e. engaged in `protected activity']; (2) his employer knew of these acts; and (3) his employer discharged him as a result of these acts." Zahodnick, 135 F.3d at 914.

IDC argues Eberhardt did not make any of these three required showings.[1] As a result of this failure, IDC argues that the district court

---

[1] As a preliminary matter, Eberhardt argues that IDC failed to preserve various grounds for appeal. His argument is unavailing. With respect to the motions for judgment as a matter of law, Eberhardt states that the only ground offered by IDC in support of a directed verdict was that Eberhardt failed to show causation. See Fed. R. Civ. P. 50(a)(2) (requiring the moving party to "specify the judgment sought and the law and the facts on which the moving party is entitled to judgment"); see also Miller v. Premier Corp., 608 F.2d 973, 979 (4th Cir. 1979) (limiting the renewed motion for judgment after the verdict to the grounds of the motion at the close of all evidence). But the record shows that IDC also stated a general objection that Eberhardt had not made out a prima facie case. See (J.A. at 370.) Although IDC's focus was on the causation element of a prima facie case, IDC did make mention of the protected activity at issue (i.e., the investigation) when it stated: "I move to dismiss on the grounds that the plaintiff has failed to show a prima facie case. That no reasonable juror can find that there is any linkage between . . . Mr. Eberhardt's writing the report and investigation and the actions which were taken to him that led to his termination." (Id.) The court finds that the issue is preserved.

erred in its jury instructions and in its denial of IDC's motions for judgment as a matter of law, new trial, and relief from judgment. As shown below, IDC is incorrect, and there was no error, with the exception of the grant of McCoubrey's Rule 60(b) motion.

A. Motions for Judgment as a Matter of Law

IDC claims that denying its motions for judgment as a matter of law was error because Eberhardt did not make out a prima facie case for retaliation. This issue is reviewed de novo , and the evidence must be viewed in the light most favorable to the non-moving party, Eberhardt. See Singer v. Dungan, 45 F.3d 823, 827 (4th Cir. 1995). In addition, the trial court should not direct a verdict if the evidence is sufficient to support the jury's verdict. See Ellis v. International Playtex, Inc., 745 F.2d 292, 298 (4th Cir. 1984). Because there was evidence supporting a prima facie case, there is no error.

1. Initiation of a Qui Tam Action

The primary area of contention is whether Eberhardt met the first element of a prima facie case by engaging in protected activity. The statute protects "lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C.A. § 3730(h). IDC contends that because the investigation was done on behalf of the employer, Eberhardt never engaged in protected activity.

IDC neglects the fact that protected activity includes "initiation of . . . an action filed or to be filed under this section." 31 U.S.C.A. § 3730(h) (emphasis added). Thus, wholly apart from whether his

_____

With respect to the jury instruction, Rule 51 requires a party's objection to "stat[e] distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. Eberhardt argues that the objection to the instruction regarding the protected activity element of a prima facie case was not specific enough. At trial, however, there was an extended discussion as to this issue, and IDC offered an alternative instruction that the court rejected. See (J.A. at 461-64.) The issue is preserved for review.

7

internal investigation rose to the level of protected activity, Eberhardt made it clear to IDC prior to his termination that he intended to bring a qui tam action under the False Claims Act and that the Act protected him from retaliation.

Eberhardt made his intentions known on several occasions prior to his termination. First, he wrote a February 9, 1995, memo to McCoubrey stating that he was being singled out for leading the investigation, that he was pretextually being put in an impossible predicament, and that IDC's actions were a violation of the Federal Whistleblower Protection Act. In a February 13, 1995, memo to Kellogg (IDC's corporate counsel), Eberhardt explicitly alleged that IDC had violated the False Claims Act and that Eberhardt was protected by section 3730(h). See (id. at 718.) That same day he told Kellogg of his intention to bring a qui tam action. On February 16, 1995, Eberhardt met with the Board of Directors and informed them of his intention to file suit against IDC under the False Claims Act. Because these acts constituted the "initiation of . . . an action . . . to be filed [under section 3730]," Eberhardt engaged in protected activity. 31 U.S.C.A. § 3730(h). In addition, IDC received express notice of Eberhardt's protected activity, and it was permissible for the jury to find that Eberhardt's termination was a result of this protected activity. Thus, sufficient evidence existed which could establish a prima facie case under section 3730(h). Accordingly, it was not error for the trial court to deny IDC's motions for judgment as a matter of law.

2. Investigation for a Qui Tam Action

Even had Eberhardt not made explicit claims that he would bring a qui tam suit against IDC, his investigatory actions nevertheless rose to the level of protected activity. Other circuits have held that an employee need not have actually filed a qui tam suit or even known about the protections of section 3730(h) in order to engage in protected activity. See, e.g., United States ex rel. Yesudian v. Howard University, 153 F.3d 731, 740 (D.C. Cir. 1998) (stating that section 3730(h)'s inclusion of an "`investigation for . . . an action filed or to be filed' within its protective cover . . . manifests Congress' intent to protect employees while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together"). These courts require that litigation need only be a "distinct

8

possibility," Neal v. Honeywell, Inc., 33 F.3d 860, 864 (7th Cir. 1994); Childree v. UAP/AG Chem., Inc., 92 F.3d 1140, 1146 (11th Cir. 1996), or similarly require that the "plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action," United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996). In short, these courts interpret the "to be filed" phrase within section 3730(h) "to mean the equivalent of an action that reasonably could be filed." Yesudian, 153 F.3d at 741. Eberhardt's investigation reasonably could have led to the filing of a qui tam action and is therefore protected activity under the statute.

IDC relies on the proposition that the actions of an employee who is assigned to investigate fraudulent activity is not sufficient under the statute because (1) it is not on behalf of the employee and therefore not protected activity, and (2) it does not put the employer on notice that the employee is engaged in protected activity. See, e.g., United States ex rel. Ramseyer v. Century Healthcare Corp. , 90 F.3d 1514, 1522 (10th Cir. 1996); Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994). Thus, if an employee is assigned the task of investigating fraud within the company, courts have held that the employee must make it clear that the employee's actions go beyond the assigned task. For example, the Tenth Circuit stated:

> Our citation to these cases should not be read to suggest that an individual whose job entails the investigation of fraud is automatically precluded from bringing a section 3730(h) action. However, we do note that such persons must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations.

Ramseyer, 90 F.3d at 1523 n.7 (emphasis added). Without taking such measures, the employee fails "to put defendants on notice that she was acting `in furtherance of' an FCA action-- e.g., that she was furthering or intending to further an FCA action rather than merely warning the defendants of the consequences of their conduct." Id.

The Fifth Circuit voiced similar concerns about notice when an employee's actions are consistent with his job duties. The court

9

pointed out that the employee "never characterized his concerns as involving illegal, unlawful, or false-claims investigations" and consequently that there was "no evidence that [the employee] expressed any concerns to his superiors other than those typically raised as part of a contract administrator's job." Robertson , 32 F.3d at 951. Thus, an action did not lie because there was no notice to the employer. This circuit cited Robertson for the proposition that "[s]imply reporting [the] concern of a mischarging to the government to [one's] supervisor does not suffice to establish that [an employee] was acting `in furtherance of' a qui tam action." Zahodnick, 135 F.3d at 914 (citing Robertson, 32 F.3d at 951).

Thus, the Yesudian/Honeywell/Childree/Hopper line of cases suggests that Eberhardt was engaged in protected activity on the basis of his internal investigation of fraud presenting the reasonable possibility of litigation, whereas the Ramseyer/Robertson line of cases suggests that Eberhardt's claim would fail because IDC was not on notice that Eberhardt's investigation could lead to a qui tam action. These two positions, however, are not necessarily inconsistent.

This court holds that an employee tasked with the internal investigation of fraud against the government cannot bring a section 3730(h) action for retaliation unless the employee puts the employer on notice that a qui tam suit under section 3730 is a reasonable possibility. Such notice can be accomplished by expressly stating an intention to bring a qui tam suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility. Such actions would include, but are not limited to, characterizing the employer's conduct as illegal or fraudulent or recommending that legal counsel become involved. These types of actions are sufficient because they let the employer know, regardless of whether the employee's job duties include investigating potential fraud, that litigation is a reasonable possibility.

It would not be enough to "[s]imply report[ the] concern of a mischarging to the government to [one's] supervisor," Zahodnick, 135 F.3d at 914, nor would it be enough to investigate"nothing more than [the] employer's non-compliance with federal or state regulations." Yesudian, 153 F.3d at 740. The "investigation must concern `false or

10

fraudulent' claims," or it does not fall under the False Claims Act. <u>Id.</u> But once an investigation involves such claims and the employee expresses concern to his employer that there actually is a likelihood of fraud or illegality, then the notice requirement is met.**2** In the instant case, Eberhardt testified not only that he characterized the billings as illegal during the course of the investigation, but also that he advised McCoubrey to obtain counsel both for IDC and for himself. It was permissible for the jury to determine that these types of actions put IDC on notice that a suit under the False Claims Act would be a reasonable possibility.

Because there was evidence that Eberhardt engaged in protected activity, that IDC had notice, and that IDC discriminated against Eberhardt as a result of the protected activity, it cannot be said as a matter of law that there was insufficient evidence to satisfy a <u>prima facie</u> case under section 3730(h). Accordingly, the district court did not err in denying IDC's motions for judgment as a matter of law.

B. <u>Jury Instructions</u>

IDC contends that the district court erred in instructing the jury regarding the element of protected activity under 31 U.S.C.A.

_____

**2** IDC expresses concern that any employee who is tasked with investigating fraud against the government would automatically be engaged in protected activity and would automatically have the benefit of constructive notice, which would nullify the statutory requirements of engaging in protected activity and giving notice. Apparently, IDC laments that an employer could not task an employee with investigating fraud without immediately being exposed to liability under a section 3730(h) action. IDC, however, is incorrect that an employee tasked with investigating fraud would automatically expose the employer to liability. Under our holding today, the investigation would not rise to the level of protected activity until the employee uncovered likely fraud, thereby making litigation a reasonable possibility. In addition, the notice requirement would not be met until the employee expressed concerns about the likelihood of fraud to the employer. Furthermore, the flip side of IDC's argument is that when an employee stumbles upon potential fraud, as here, and reports it to the employer, the employer can avoid liability by assigning that employee the task of investigating the fraud. The statute does not intend to offer such protection to the employer.

11

§ 3730(h). The applicable standard is whether the jury charge, as a whole, adequately states the controlling law. See Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987). The court instructed the jury, with respect to the first element of a prima facie case, that Eberhardt must prove by a preponderance of the evidence "[t]hat his actions were calculated or could reasonably lead to a viable False Claims Act case." (J.A. at 500.) IDC objected because it wanted the instruction to state that the plaintiff "took actions in furtherance of a qui tam suit." (J.A. at 63, 462.) As stated above, this court adopts the view of the Seventh, Ninth, Eleventh, and D.C. Circuits that an employee engages in protected activity when litigation is a"distinct possibility," Honeywell, 33 F.3d at 864; Childree, 92 F.3d at 1146, when the conduct "reasonably could lead to a viable FCA action," Hopper, 91 F.3d at 1269; Yesudian, 153 F.3d at 740, or when, as stated in our holding above, litigation is a "reasonable possibility." Accordingly, the jury instruction was correct, and the district court did not err in entering judgment on the verdict.

C. Motion for New Trial

"[T]he granting or refusing of a new trial is a matter resting in the sound discretion of the trial judge, and . . . his action thereon is not reviewable upon appeal, save in the most exceptional circumstances." Aetna Cas. & Sur. Co. v. Yeatts, 122 F.2d 350, 354 (4th Cir. 1941). IDC has offered no exceptional circumstances which would warrant this court finding that the trial court abused its discretion. Thus, there was no error in denying the motion for a new trial.

D. Rule 60(b) Motions for Relief from Judgment

1. IDC's Rule 60(B) Motion for Relief from Judgment

IDC moves for relief from judgment under Rule 60(b)(4) and (6) of the Federal Rules of Civil Procedure for Eberhardt's failure to make out a prima facie case under 31 U.S.C.A. § 3730(h). A Rule 60(b) motion is reviewed for abuse of discretion. See CNF Constructors, Inc. v. Donohoe Constr. Co., 57 F.3d 395, 401 (4th Cir. 1995). IDC contends that its basis for relief is that Eberhardt did not engage in protected activity and that there was no notice to IDC. These are the same unavailing arguments presented in IDC's motions for judg-

12

ment as a matter of law. "Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue." United States v. Williams, 674 F.2d 310, 312 (4th Cir. 1982). Eberhardt made out a prima facie case under 31 U.S.C.A. § 3730(h), and the district court did not abuse its discretion in denying IDC's Rule 60(b) motion. **3**

2. IDC and McCoubrey's Rule 60(b) Motion for Relief from Judgment

IDC and McCoubrey move for relief from judgment under Rule 60(b)(4) of the Federal Rules of Civil Procedure on the basis that the judgment is "void" for lack of subject matter jurisdiction. They rely on section 3730(e)(4), which denies jurisdiction to any court over an action under section 3730 that is based upon prior public disclosure. Subsection (e)(4) provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C.A. § 3730(e)(4)(A). Because there was no public disclosure, this provision does not deny subject matter jurisdiction.

While several sub-issues exist with respect to this question,**4** the threshold issue is whether there was public disclosure. The statute specifically refers to three types of public disclosure: (1) "in a criminal, civil, or administrative hearing"; (2) "in a congressional, administrative, or Government Accounting Office report, hearing, audit, or

_____

**3** McCoubrey incorporates this motion into his independent Rule 60(b) motion in which he claims that he is not an "employer" under the Act. See infra Part II.D.3. The argument is unavailing there as well.
**4** For example, there are issues whether subsection (e)(4) applies to actions under subsection (h) or whether Eberhardt is an "original source."

13

investigation"; or (3) "from the news media." Id. The Eleventh Circuit has held these forums to be exclusive:

> As a preliminary matter, we find that the methods of "public disclosure" set forth in section 3730(e)(4)(A) are exclusive of the types of public disclosure that would defeat jurisdiction under that section. The list of methods of "public disclosure" is specific and is not qualified by words that would indicate that they are only examples of the types of "public disclosure" to which the jurisdictional bar would apply. Congress could easily have used "such as" or "for example" to indicate that its list was not exhaustive. Because it did not, however, we will not give the statute a broader effect than that which appears in its plain language.

United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1499-1500 (11th Cir. 1991). We agree with this reasoning, and it is clear that none of these forums apply in the instant case. IDC alleges that the public disclosure occurred when IDC officials met with the State Department on January 20, 1995, in order to disclose the advance billings. There is no evidence that this meeting was recorded or transcribed. IDC does not even attempt to demonstrate how this meeting fits into one of the three categories. As a result, section 3730(e)(4) does not defeat subject matter jurisdiction.

3. McCoubrey's Rule 60(b) Motion for Relief from Judgment

The district court granted McCoubrey's Rule 60(b) motion to be relieved from the judgment on the basis that he could not be held individually liable as an "employer" under section 3730(h). The district court abused its discretion in granting this motion. Rule 60(b) is not a proper vehicle for such a motion.

Essentially, McCoubrey asserts a Rule 12(b)(6) motion for failure to state a claim. But there is no authority for such a motion to be brought after trial. Rule 12(h), entitled "waiver or preservation of certain defenses," specifically provides that "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed. R. Civ.

14

P. 12(h)(2). This rule implies that the defense is waived after the completion of a trial on the merits. Other circuits have so held. See Anderson v. United Tel. Co., 933 F.2d 1500, 1507 (10th Cir. 1991) ("The failure to state a claim for relief cannot be raised for the first time after trial on the merits."); Brown v. Trustees of Boston Univ., 891 F.2d 337, 357 (1st Cir. 1989) ("Unlike a lack of subject matter jurisdiction -- a defense that may be considered at any point in a judicial proceeding -- defense of failure to state a claim is normally waived if not raised `at the trial on the merits' or before." (citations omitted)); Weatherhead v. Globe Int'l., Inc., 832 F.2d 1226, 1228 (10th Cir. 1987) ("[A] defense of dismissal is waived . . . when presented after trial."). We adopt the same view and hold that Rule 60(b) may not serve as a surrogate to a tardy Rule 12(b)(6) motion.

McCoubrey nevertheless argues that Rule 60(b) offers relief because the judgment is "void," Fed. R. Civ. P. 60(b)(4), or because of "other reason[s] justifying relief," id. at 60(b)(6). His argument fails. Although Rule 60(b) offers relief from judgments that are void, "`a judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" Schwartz v. United States, 976 F.2d 213, 217 (4th Cir. 1992) (quoting 11 Wright & Miller, Federal Practice and Procedure § 2862 at 198-200 (1973)).

None of these three criteria have been met in the instant case. First, it is uncontested that the district court has jurisdiction over the parties. Second, we have rejected IDC's contention that the district court lacks jurisdiction over the subject matter. See supra Part II.D.2. Third, there has been no denial of McCoubrey's right to due process because he had ample opportunity to move for dismissal under Rule 12(b)(6) prior to and during trial. Cf. Schwartz, 976 F.2d at 217 (holding that there is no violation of due process when an order enforces a litigant's informed decision to settle and thereby to forego procedures designed to protect due process rights); Pitts v. Board of Educ., 869 F.2d 555, 557 (10th Cir. 1989) (holding that due process rights may be waived by a knowing failure to assert them). Accordingly, the district court abused its discretion in allowing relief under Rule 60(b)(4).[5]

_____

[5] The district court based its decision upon Compton v. Alton S.S. Co., 608 F.2d 96 (4th Cir. 1979). In Compton, the district court entered a

15

Neither could the district court's ruling be upheld under Rule 60(b)(6).**6** Rule 60(b)(6) allows relief for "any other reason justifying relief from the operation of the judgment."

> [Rule 60(b)(6)] has been described as the"catch-all" clause because it provides the court with "a grand reservoir of equitable power to do justice in a particular case" and "vests

_____

default judgment for the plaintiff based upon an erroneous interpretation of a statute. The Fourth Circuit held that the trial court's "mistake lead to a judgment unauthorized under both [the relevant statute] and under the pleadings. Such a judgment would meet the criteria of the fourth itemized ground for relief set fourth in the Rule, i.e. `the judgment is void.'" Id. at 104.

Compton, however, does not apply to the instant case because it involved a default judgment. The basis for the court's decision to allow relief under Rule 60(b) was as follows:

> The judgment entered in this case violated the mandate of Rule 54(c). The first sentence of that rule states that a judgment by default is limited to relief to which the plaintiff is entitled under his complaint. There is a reference in the prayer of the complaint to "penalty wages as provided by the United States statutes," (without the specification of the applicable statute) but the allegations in the body of the complaint, in which the plaintiff sets forth the facts of his claim, demonstrate indisputably that the claim of the plaintiff did not qualify for the penalty award allowable under [the statute]."

Id. at 104-05. Thus, the reasoning of Compton does not apply to Eberhardt's claim against McCoubrey because there is no default judgment in the instant case with relief limited to what was in the pleadings. Due process concerns exist when relief under a default judgment goes beyond the complaint because it would result in fundamental unfairness to a defendant who chooses not to appear and thereby limit relief to the grounds of the complaint. See id. at 106 & n.18. In the instant case, these due process concerns do not exist because the defendant was present for trial. Accordingly, Compton is inapplicable, the judgment is not void for lack of due process, and Rule 60(b) provides no relief.

**6** Although the district court granted the motion based upon an analysis of Rule 60(b)(4) and not upon 60(b)(6), subsection (6) was one of the bases proffered by McCoubrey for relief from the judgment.

16

power in courts adequate to enable them to vacate judg-
ments whenever such action is appropriate to accomplish
justice" where relief might not be available under any other
clause in 60(b).

Compton v. Alton S.S. Co., 608 F.2d 96, 106-07 (4th Cir. 1979) (quot-
ing 7 Moore's Federal Practice § 60.27(2), at 375; Klapprott v.
United States, 335 U.S. 601, 615 (1949)). Yet this is not a case in
which the judgment must be vacated in order to accomplish justice.
As discussed above, a 12(b)(6) motion cannot be raised for the first
time after trial, and there was no denial of due process. Consequently,
Rule 60(b)(6), like Rule 60(b)(4), cannot accomplish what McCou-
brey asks of it.**7**

E. Prejudgment Interest

Finally,**8** IDC contends that the district court erred in granting Eber-
hardt's motion for prejudgment interest. Under section 3730(h), a suc-
cessful plaintiff is entitled to certain forms of relief, including interest
on an award of back pay:

> Such relief shall include reinstatement with the same senior-
> ity status such employee would have had but for the dis-
> crimination, 2 times the amount of back pay, interest on the
> back pay, and compensation for any special damages sus-
> tained as a result of the discrimination, including litigation
> costs and reasonable attorneys' fees.

31 U.S.C.A. § 3730(h) (emphasis added). The trial court instructed
the jury that if it found for Eberhardt, he was entitled to two times the
amount of back pay, interest on that back pay, and any special dam-
ages. The jury awarded a lump sum, and judgment was entered on the
verdict. There was no categorization of the award, but IDC concedes
that it did not include prejudgment interest, as it clearly totaled two

---

**7** Because Rule 60(b) is not a proper mechanism for relief, it is unnec-
essary to determine whether individuals may be considered "employers"
under section 3730(h).

**8** Eberhardt's claim that the district court erred in denying him rein-
statement was abandoned at oral argument.

17

times the back pay. <u>See</u> (Appellant's Br. at 45; Appellant's Reply Br. at 20-21.)

Section 3730(h), however, does not provide for a discretionary award of prejudgment interest. Rather, use of the word "shall" mandates such an award. <u>See Anderson v. Yungkau</u>, 329 U.S. 482, 485 (1947) ("The word `shall' is ordinarily `The language of command.'" (quoting <u>Escoe v. Zerbst</u>, 295 U.S. 490, 493 (1935))); <u>see also United States ex rel. Kent v. Aiello</u>, 836 F.Supp. 720, 725 (E.D. Cal. 1993) (recognizing the mandatory phrasing of the language in section 3730(h)). The jury was instructed that Eberhardt was entitled to interest, but, as IDC concedes, the jury ignored this instruction and only awarded double back pay. Accordingly, it was not error for the court to add prejudgment interest to the verdict.

III.

We reverse the grant of McCoubrey's Rule 60(b) motion for relief from the judgment and remand in order for judgment to be entered against McCoubrey. Finding no other reversible error, we affirm all other decisions by the district court.

<u>AFFIRMED IN PART, REVERSED IN PART, AND REMANDED</u>

18