**BERNOS COAL COMPANY and Excello Land and Mineral Corporation**

v.

**Manuel LUJAN, Secretary of the United States Department of the Interior, Office of Surface Mining and Reclamation and Enforcement, et al.**

**Civ. No. 3–87–437.**

United States District Court, E.D. of Tennessee, N.D.

June 6, 1989.

Joseph N. Clarke, Jr., Wagner, Myers & Sanger, P.C., Knoxville, Tenn., for plaintiffs.

John W. Gill, Jr., U.S. Atty., Charles P. Gault, Special Asst. U.S. Atty., U.S. Dept. of Interior, Knoxville, Tenn., for defendants.

## ORDER

HULL, Chief Judge.

This is an appeal from a decision issued May 18, 1987, by the United States Department of Interior Board of Land Appeals. 30 U.S.C. § 1276(a)(2). In addition, the plaintiffs seek permanent injunctive relief against the defendants.

In 1978, the State of Tennessee issued Bernos Coal Company (Bernos) a surface mining permit, No. 78-148, to conduct mining in a previously mined area in Bledsoe County, Tennessee. Excello Land and Mineral Corporation (Excello) succeeded to the interests of Bernos under the permit and obligated itself contractually to follow its reclamation requirements. In late 1978 and early 1979, Excello conducted limited coal extraction activities in the permit area. It soon discovered that the hoped for coal reserves did not exist. It backgraded and at least partially reclaimed the disturbed area. It also did some grading in areas disturbed by previous operations. Excello removed its equipment from the permit area in the fall of 1979. On December 6, 1979, the area was inspected by the Office of Surface Mining (OSM) inspector Walker and was found to have been returned to its approximate original contour.

Mr. Walker inspected the mining site five times in 1980, without citing it for any violations.

On January 19, 1981, the site was visited by another OSM inspector, Douglas Godesky, who wrote up a Notice of Violation (NOV) citing Bernos, in pertinent part, for failing to establish final graded slopes which did not exceed the approximate premining slopes and failing to backfill and grade to the most moderate slope possible. This NOV was amended on March 16, 1981, to include Excello as the operator. After an informal hearing on April 7, 1981, the NOV was modified to extend the abatement period. On June 16, 1981, Cessation Order (CO) 81-2-75-22 was issued to Bernos and Excello for failing to correct the slope violation previously cited. On June 17, 1981, Bernos and Excello filed for review of this CO. On December 11, 1981 (six months rather than thirty days after the CO), the OSM issued its notice of proposed penalty assessment of $22,500.00 and Bernos and Excello requested a conference. Unfortunately, before the conference could be held, on February 24, 1982, Excello suffered a fire and lost its maps, photos, and other records of its reclamation efforts. The OSM's conference report affirmed the assessment. Bernos and Excello paid the assessment into escrow, petitioned for its review, and moved to dismiss it as untimely. The appeal on CO-81-2-75-22 was not heard until November 19, 1984.

In the meantime, on August 10, 1982, the State of Tennessee became the primary regulatory authority for mining in the state under the Surface Mining Control and Reclamation Act subject only to oversight by the Department of the Interior through the OSM. 30 U.S.C. § 1253 (1983). In October and November of 1983, state OSM inspectors issued NOVs to Bernos and Excello for "rill and gully" violations. The plaintiffs vigorously contested these before the Tennessee Board of Reclamation Review (Tennessee Board), the body now sanctioned by the OSM to decide such cases. On April 19, 1984, the Tennessee Board vacated the rill and gully violations but ordered specific corrective measures to be

performed on the permit site. On April 25, 1984, the Tennessee Board found the measures to have been taken, ruled that the mine site had been reclaimed, and ordered the reclamation bond released.

Less than a week later, on May 1, 1984, the OSM suspended the authority of Tennessee's Department of Surface Mining on a finding that the state was not adequately implementing and enforcing its regulations. The OSM resumed direct enforcement efforts.

On July 20, 1984, OSM Inspector Morgan visited the Excello mining cite and issued the same rill and gully notice of violation just litigated before the state board. Bernos and Excello appealed and also applied for temporary relief pending a final ruling on the merits of the NOV. On October 22, 1984, an administrative law judge (ALJ) denied their application for temporary relief finding that Bernos and Excello had failed to show that there was a substantial likelihood that they would eventually prevail on the merits. In his ruling, the ALJ specifically rejected the plaintiffs' contention that the state agency's release of the bond rendered the mine site immune from further regulation and that its ruling on the rill and gully violation was binding on the OSM. Bernos and Excello appealed from the denial of temporary injunctive relief to federal court. The parties consented to a hearing before United States Magistrate Robert P. Murrian.

On December 28, 1984, in *Excello v. Clark*, CIV–3–84–902, Magistrate Murrian reversed the ALJ's denial of temporary relief. In a carefully reasoned opinion, he ruled that the same operative facts (rill and gully violations) gave rise to the two (state and federal) enforcement proceedings; that the issues were actually and finally litigated in the state proceedings; that the DSM (state) and OSM (federal) were privies because both agencies were participating in the same federal program, enforcing the same guidelines, and because the DSM was the OSM's actual representative; and that, therefore, the state ruling had collateral estoppel or *res judicata* effect on the subsequent federal proceedings. Magistrate Murrian's ruling was never appealed.

Back before the ALJ, Bernos and Excello moved for a summary decision, relying on the Magistrate's ruling that the OSM was collaterally estopped from relitigating the rill and gully violations. The motion was unopposed. On April 20, 1985, ALJ David Torbett granted the uncontested motion and vacated the NOV.

A few months later, ALJ Torbett finally ruled on the appeal of CO–81–2–75–22, the slope violations issued back in 1981 by OSM Inspector Godesky before the state became the regulatory authority. In an order dated July 26, 1985, Judge Torbett held that both the CO itself and the penalty assessment were proper. He also declined the invitation to find the federal enforcement precluded by the Tennessee Board's prior ruling that the mine site had been reclaimed reasoning that the slope violation (unlike the rill and gully question) had not been *actually litigated* before the Tennessee Board.

Bernos and Excello appealed from this decision to the United States Department of Interior Board of Land Appeals (IBLA). The grounds raised on appeal were: (1) that the NOV and CO were invalid because their mining activity had had no adverse impact on the permit site, (2) that even if the NOV and CO were valid, the doctrines of *res judicata* and collateral estoppel barred the OSM from further enforcement because the state had already determined that the site was fully reclaimed; and (3) that the CO should have been dismissed anyway because the penalty assessment was untimely and the delay had caused them actual prejudice (the fire loss of their reclamation records).

On May 18, 1987, ALJ Bruce Harris of IBLA found that the NOV and CO had been properly issued; that Bernos and Excello had not been prejudiced by the delay in the penalty assessment; and, more importantly, that the Tennessee Board's ruling that the mine site had been reclaimed had no preclusive effect on federal enforcement attempts. Judge Harris specifically addressed Magistrate Murrian's ruling on

the *principles* of *res judicata* and collateral estoppel. He held that the legislative history of the Surface Mining Control and Reclamation Act, when read in conjunction with Section 521(a)(1), 30 U.S.C. § 1271(a)(1) (1982) (which provides for federal inspection and enforcement in states with regulatory primacy), requires the conclusion that a "countervailing statutory policy" warrants an exception to the preclusion doctrines. It would be inconsistent with the OSM's enforcement responsibility during the interim and permanent regulatory periods to apply collateral estoppel or *res judicata* principles to the state board's rulings. He also found that the OSM was not privy to the state board's actions. In the alternative, he held that even if Magistrate Murrian had been correct that these doctrines applied in *Excello v. Clark* (a situation in which the federal inspectors cited the plaintiffs for the exact same violations previously cited by state inspectors and already litigated before the state board), they would not apply in the case of CO–81–2–75–22 which involved a violation noticed by the federal agents *before* the state became the regulatory authority and not actually litigated before the Tennessee Board.

Bernos and Excello have now appealed from the IBLA ruling to this Court. The issues on appeal are the same: whether the ALJ erred factually in upholding the CO or in finding that Bernos and Excello had not been prejudiced by the delay in the penalty assessment and whether he erred as a matter of law in finding no preclusive effect to the Tennessee Board of Reclamation and Review's determination that the permit site had been fully reclaimed.

 The factual findings must be upheld if supported by substantial evidence in the record. Certainly the November 6, 1984 survey by Roland Harper and the testimony of Inspector Godesky constitute substantial evidence to support a conclusion that the violation underlying the cessation order had, in fact, occurred. In addition, the fact that 1984 survey of slopes could be compared to those mentioned in the permit package supported the ALJ's

finding that the loss of Excello's own records and photographs was not so prejudicial that the CO should have been dismissed. Accordingly, the Secretary's findings on these two factual issues are AFFIRMED.

 However, the IBLA decision that the Tennessee Board's ruling had no preclusive effect is clearly erroneous. The legal issues of whether or not the Surface Mining Control and Reclamation Act had a "countervailing statutory policy" which precluded the application of traditional *principles* of *res judicata* and collateral estoppel and whether or not the DSM and the OSM were in privity had already been conclusively determined between these parties in *Excello v. Clark* and were not open to re-examination by the ALJ. *See U.S. v. Stauffer Chemical Co.*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984). The only issue which was properly before the IBLA was whether or not the Tennessee Board's decision that the site had been fully reclaimed had *res judicata* effect with regard to CO–81–2–75–22 (which addressed slope violations), given the fact that the board had made its ruling in the context of a challenge to rill and gully violations. Under collateral estoppel principles, once an issue is actually litigated and *necessarily determined*, the determination is conclusive in subsequent suits based on a different cause of action involving a party or privy to the prior litigation. *Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) (emphasis added). In the opinion of this Court, whether or not the site conformed with the slope requirements of the permit was necessarily determined by the Tennessee Board in order for it to have found the site "fully reclaimed" and to have ordered release of the reclamation bond. Even if the Tennessee Board made a grievous error, the OSM is not free to relitigate any issue regarding whether or not Bernos and Excello properly reclaimed the permit site.

Accordingly, the final decision of the Interior Board of Land Appeals is hereby REVERSED; the subject NOV, CO and

penalty assessment are VACATED; and the defendants are permanently enjoined from further attempts to regulate the mine site in question through permit no. 78–148.