**Harvey CATRON**

and

**Jo D. Molinary, Trustee of the Susan Pruitt Cloud Land Trust, Plaintiffs,**

v.

**Bruce BABBITT, Secretary, United States Department of the Interior, Defendant,**

and

**Powell Mountain Coal Company, Intervenor.**

**Civil Action No. 96–001B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Feb. 28, 1997.

## MEMORANDUM OPINION

WILSON, District Judge.

This is an action pursuant to 30 U.S.C. § 1276 of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"). The plaintiffs, Harvey Catron and Jo D. Molinary ("Catron and Molinary"), seek judicial review of an administrative decision ("the decision") rendered by the defendant Bruce Babbitt, Secretary of the Interior ("the Secretary"), through the Interior Board of Land Appeals ("IBLA" or "the Board"). The decision involved post-mining use and reclamation by intervenor Powell Mountain Coal Company ("Powell Mountain") of land known as the Pruitt Heirs Tract (or "the tract") located in Lee County, Virginia. The case is before this court on cross motions for summary judgment. The court grants summary judgment in favor of the Secretary and against Catron and Molinary and, therefore, finds it unnecessary to decide the issues raised by Powell Mountain.

**I**

The complicated series of events that form the basis for this suit began in 1990, when Powell Mountain misled the Virginia Division of Mined Land Reclamation ("DMLR") in seeking a permit to mine the Pruitt Heirs Tract.[1] DMLR subsequently revoked the permit and ordered Powell Mountain to reclaim the tract. Catron is a downstream landowner who enjoys hiking and camping on the tract. Molinary is a trustee for most of the surface owners. Molinary brought a citizen suit pursuant to 30 U.S.C. § 1270(f) (1988), and the court awarded damages against Powell Mountain arising out of violations of the SMCRA. Molinary agreed to withdraw her reclamation claims from that litigation in favor of pursuing administrative remedies.

On October 25, 1990, Catron and Molinary filed a citizens' complaint with the Office of Surface Mining ("OSM") pursuant to 30 U.S.C. § 1271(a)(1) (1988) alleging that, in reclaiming the tract, Powell Mountain left an unstable highwall and committed other violations of the Virginia Surface Mining Act. OSM issued a ten-day notice ("TDN") on November 1, 1990 and visited the site with DMLR officials one week later. In response, DMLR revoked Powell Mountain's permit and issued a cessation order, requiring the company to cease surface mining and to complete all reclamation "in accordance with applicable standards of the Virginia Coal Surface Mining and Reclamation Act" by March 1, 1991. On January 22, 1991, DMLR terminated that cessation order.

Catron and Molinary filed a second citizens' complaint on April 19, 1991, alleging that DMLR had wrongfully approved reclamation of the Pruitt Heirs tract. OSM issued a TDN on April 23, 1991. On May 1, 1991, DMLR responded that "all requirements have been met for reclamation at this stage of the operations" and that it would take no action against Powell Mountain. To evaluate DMLR's response, OSM's Big Stone

---

1. For a more detailed background and factual account of the events leading to this suit, *see generally Molinary v. Powell Mountain Coal Co.,* 892 F.Supp. 136 (W.D.Va.1995); *Molinary v.* *Powell Mountain Coal Co.,* 832 F.Supp. 169 (W.D.Va.1993); *Molinary v. Powell Mountain Coal Co.,* 779 F.Supp. 839 (W.D.Va.1991).

Gap Field Office ("field office") requested technical assistance from OSM's Eastern Support Center ("ESC"), which inspected the tract and prepared a report. OSM Assistant Deputy Director Hatfield ("Hatfield") upheld DMLR in all respects, except as to actions concerning the outslope and highwall instability. The field office issued a TDN regarding these concerns. DMLR informed the field office that it had issued a "Revision Order Notice" to Powell Mountain. The field office agreed with ESC's determination that DMLR's response to the TDN was appropriate. Catron and Molinary sought informal review of the field office's decision with Hatfield on November 6, 1991.

On October 7, 1991, Catron and Molinary filed a third citizens' complaint alleging "Pond 5," located on the tract, was leaking. That day OSM issued a TDN to DMLR. On October 9, 1991, DMLR issued a notice of violation to Powell Mountain, giving them until October 28 to perform repairs. The field office inspected on November 21, 1991 and, six days later, notified DMLR that it had not taken "appropriate action" regarding Pond 5. A subsequent inspection found satisfactory reclamation, and OSM took no federal enforcement action. On January 6, 1992, Catron and Molinary amended their request for informal review to include the field office's decision not to issue a notice of violation to Powell Mountain concerning Pond 5.

The above issues were submitted to OSM, which decided on February 18, 1993, that DMLR had taken appropriate action. Hatfield found that Powell Mountain had used all available spoil to eliminate the highwall to the maximum extent practicable and that the roadway complied with the permit reclamation plans. With respect to Pond 5, she found that the revision to eliminate the pond was classified by DMLR as "insignificant," that the public notice requirements of the approved program did not apply, and that removal of the structure more than resolved Catron and Molinary's concerns. She noted that OSM properly took no enforcement action regarding Pond 5 because, when a violative condition ceases to exist, federal enforcement action is no longer required.

Catron and Molinary appealed that decision to the IBLA, which consolidated all of the above issues for review. More than three years later, Catron and Molinary submitted to the Board the report of Patrick M. Howard ("the Howard report"), a mining engineer they had retained to inspect the tract. Howard essentially disputed OSM's findings regarding the roadway. Powell Mountain submitted a rebuttal report ("the Casey report") contesting the Howard report. Catron and Molinary in turn submitted Howard's rebuttal report, which disputed the Casey report.

The IBLA issued its decision on November 30, 1995. The Board remanded the issue of highwall destabilization to OSM for want of a complete agency record. Regarding Pond 5, the Board determined that Catron and Molinary failed to show that either the state's action in allowing permit revision or its decision not to issue a notice of violation was arbitrary and capricious. The Board determined the DMLR's decision to approve an "improved roadway" was arbitrary and capricious and that the state should have required Powell Mountain to regrade the road and to use the excess spoil placed on the roadway to backfill the highwall. However, the IBLA found that, at the time OSM issued its decision, a stable area would have had been disturbed for only negligible recovery. Moreover, the Board concluded that Catron and Molinary were required to show through expert analysis that their proposed measures were better than, not merely different from, those undertaken and that the plaintiffs had not met this burden. Catron and Molinary then filed suit against the Secretary in this court and Powell Mountain moved to intervene.

## II

■ Catron and Molinary argue that this court has jurisdiction pursuant to 30 U.S.C. § 1276(a)(2), which provides that "any other proceeding required to be conducted pursuant to section 554 of Title 5 shall be subject to judicial review...." The Secretary, on the other hand, rests jurisdiction on 30 U.S.C. § 1276(a)(1), which provides for judicial review of "[a]ny other action constituting

rulemaking by the Secretary...."[2] The Secretary suggests that his policy of referring disputes to an administrative law judge constitutes rulemaking. The court is not convinced that the actions of the Secretary in this case constitute rulemaking and believes that the better basis for jurisdiction is 30 U.S.C. § 1276(a)(2). *See, e.g., Bernos Coal Co. v. Lujan,* 739 F.Supp. 1133 (E.D.Tenn. 1989); *Moose Coal Co. v. Clark,* 687 F.Supp. 244 (W.D.Va.1988). The court must hear a § 1276(a)(2) complaint solely on the record before the Secretary and "the Secretary's findings, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 30 U.S.C. § 1276(b). *See also Foster E. Sword,* 138 IBLA 74 (Feb. 3, 1997). In this case, the Secretary reviewed OSM's decision under the "arbitrary and capricious" standard. 30 C.F.R. § 842.11(b)(1)(ii)(B)(2). Thus, if there is substantial evidence that his decisions were not arbitrary and capricious, the court must uphold the Secretary.

## III

 SMCRA protects surface landowners from surface coal mining operations. 30 U.S.C. § 1202(b). Congress charged the Secretary of the Interior with interpreting and enforcing SMCRA. To carry out this directive, the Secretary has promulgated certain rules and regulations. Congress also gave federal courts the power to review the agency's actions in certain circumstances. *See, e.g.,* 30 U.S.C. § 1276(a)(1) and (a)(2). However, a reviewing court should defer to the agency's interpretation of those statutes and regulations and should not attempt to substitute its judgment for that of the agency. *See Arkansas v. Oklahoma,* 503 U.S. 91, 110, 112 S.Ct. 1046, 1058–59, 117 L.Ed.2d 239 (1992) (reviewing actions of the EPA). As the Supreme Court has noted, "[a] court reviewing an agency's adjudicative action should accept the *agency's* factual findings if those findings are supported by substantial evidence on the record as a whole. The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence." *Id.* at 113, 112 S.Ct. at 1060 (citations omitted). *See also Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

 This court sits in essentially an appellate role in reviewing the IBLA decision, which reviewed the actions and decisions of OSM. The Department of the Interior, and not this court, has the technical expertise to determine whether a site has been properly reclaimed.[3] As long as there is at least substantial evidence to support the IBLA's decision, the court will defer to that expertise and not upset the agency's decision.

Catron and Molinary challenge the Secretary's decision on three grounds. First, the decision arbitrarily and capriciously abrogated Molinary's right to have the Pruitt Heirs Tract restored to its pre-mining condition. Second, the Secretary failed to order OSM to inspect and take enforcement action in response to Powell Mountains's violation governing backfilling and grading of the tract. Third, the Secretary abused his discretion by refusing to convene an adjudicatory hearing to resolve a factual dispute concerning Powell Mountain's elimination of the highwalls on the tract "to the maximum extent technically practical." The court will address each of these issues in turn.

## A

 Catron and Molinary first contend that the Secretary arbitrarily and capriciously abrogated their right to compel restoration of the Pruitt Heirs Tract as closely as possible to a condition capable of supporting its

---

**2.** Alternatively, the parties argue that jurisdiction exists under the Administrative Procedures Act, 5 U.S.C. § 760(2)(E).

**3.** Catron and Molinary point out that a decision by the Secretary, acting through the IBLA, is not entitled to any particular deference since the IBLA sits as an appellate body and does not use its technical expertise in this process. *See Dr. Pepper/Seven–Up Companies, Inc. v. F.T.C.,* 991

F.2d 859, 862 (D.C.Cir.1993) (citing *Hennepin County v. Sullivan,* 883 F.2d 85, 91 (D.C.Cir. 1989), *cert. denied* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990)). However, a proper reading of *Dr. Pepper* makes clear that de novo review applies only to the *legal sufficiency* of an agency decision and not its factual underpinnings.

pre-mining recreational uses. Essentially, they argue that the Secretary allowed Powell Mountain to leave in place an improved roadway and sedimentation control swamp which were not part of the pre-mining contour. Although the IBLA found that DMLR's approval of an "improved roadway" was arbitrary and capricious, it disagreed with Catron and Molinary's position that the road should be removed and upheld OSM's decision not to disturb the area significantly for a negligible recovery. Specifically, OSM found that "[r]emoval of the excess material from the roadway would result in near total redisturbance of the entire area to eliminate a negligible amount (one to two feet) of additional highwall." The IBLA further held that Catron and Molinary had only "present[ed] some other course of action which may be theoretically as correct as that chosen by OSM." *Harvey Catron and Jo D. Molinary*, 134 IBLA 244, 265 (November 30, 1995).

This court has made an independent review of the record. It is clear that the IBLA considered expert testimony offered by Catron and Molinary and OSM concerning the environmental effects of eliminating or reconfiguring the road and the sedimentation ditch. The IBLA nevertheless determined that OSM was entitled to rely on ESC's opinion that leaving the road in its current condition satisfied the statutory environmental goals. In the court's view, this constitutes substantial evidence. The court, therefore, affirms the IBLA decision and grants summary judgment on this issue in favor of the Secretary.

## B

■ Catron and Molinary also allege that the Secretary erred in failing to order a federal inspection and appropriate enforcement action to address Powell Mountain's violation of backfilling and grading requirements. They cite 53 Fed.Reg. 26729 (July 14, 1988) for the proposition that, once he has discovered a violation, the Secretary must order a federal inspection. Apparently, Catron and Molinary believe that, based on the IBLA's 1995 decision that DMLR had, in 1991, not taken appropriate action, the Secretary should have, in 1995, started all over and ordered a new inspection of the tract based on what the plaintiffs claim is the continued presence of a five-year-old violation.[4]

In 1995, the Secretary determined that DMLR's violation in allowing an improved roadway to remain on site was de minimis and that OSM's 1992 decision not to remove the roadway was proper, given the environmental concerns and consequences. While the court concedes that the Secretary's failure to order an inspection may be a minor and technical violation of its own rules, the court must "give due regard to the [agency's] interpretation of its own regulations...." *Arkansas v. Oklahoma*, 503 U.S. at 112, 112 S.Ct. at 1060. Upon reviewing the record, the court is convinced that the Secretary had ample evidence of the condition of the tract at the time of his decision. The site had been visited and or inspected countless times over the course of five years by the DMLR, OSM, and various experts.[5] IBLA reviewed the ESC report, the Howard Report, and the Casey report. The record also contains pictures and videotapes of the tract. Based on that information, the Secretary concluded that the area had been properly reclaimed and that to proceed as Catron and Molinary desired would not result in improved reclamation. There is no reason to believe yet another inspection would uncover any new information concerning the condition of the

---

4. In their reply brief, Catron and Molinary, in effect, ask this court to determine whether the violations they allege actually exist and, if so, to order a federal inspection. They view this as a question of law; this court views it as a question of fact. As noted above, the agency and not this court has the technical expertise to determine whether reclamation violations have occurred and the proper means to deal with any such violations.

5. Catron and Molinary, citing congressional history, assert that this court should not give deference to federal regulators in a citizen suit context. This view contradicts the plain language of SMCRA, which requires courts to apply a "substantial evidence" or "arbitrary and capricious" standard of review. *See* 30 U.S.C. § 1276(a)(1) and (b).

tract.[6] The court must defer to the technical expertise of OSM in reaching its 1992 decision and agrees with the Secretary that, on the record presented, the failure to order an inspection in 1995 is minor violation which resulted in no significant harm to the reclamation of the Pruitt Heirs Tract.

The court finds substantial evidence in the record to support the Secretary's decision and concludes he did not act arbitrarily and capriciously in failing to order a federal inspection. Accordingly, the court grants summary judgment on this issue in favor of the Secretary.

C

■ Finally, Catron and Molinary allege the Secretary abused his discretion by refusing to order an evidentiary hearing on the disputed factual issue concerning the amount of highwall that Powell Mountain could eliminate by removing the improved roadway. They claim that, once the IBLA considered the Howard report and found some conflict with OSM's analysis, the IBLA should have ordered an evidentiary hearing to resolve the dispute rather than defer to OSM's technical expertise.

43 C.F.R. § 4.1286(a) provides that "[a]ny party may request the Board to order a hearing before an administrative law judge ... within 20 days after the answer is due." Catron and Molinary concede that they did not meet this deadline. However, they note that the Board "may, on its own motion, refer any case to an administrative law judge for a hearing on an issue of fact," *id.* at § 4.1286(b), and argue that the conflicting evidence regarding the amount of available spoil to reconfigure the roadway compelled such a hearing. Catron and Molinary claim that the IBLA has a "policy" of providing a factual hearing whenever it perceives an unresolved factual dispute in citizen enforcement cases. However, the cases cited by Catron and Molinary do not establish a "policy" of referral. Rather, in both cases, the

IBLA merely determined there was a factual dispute and exercised its discretion to order a hearing. *See Mr. and Mrs. William J. Hamilton,* 105 IBLA 160 (Oct. 28, 1988); *Clifford Mackey,* 99 IBLA 285 (Oct. 23, 1987).

Catron and Molinary argue that the Board's decision to consider the Howard report, which was also offered in an untimely manner, as well as the Casey report and the Howard rebuttal report, in some way affects its decision not to order a hearing. The fact that the IBLA allowed the parties to submit late evidence and then discounted some of that evidence is irrelevant to its determination to order a hearing. After reviewing the reports, the Board still determined that deference should be given to OSM's technical expertise and that no hearing was required.

■ The IBLA has considerable discretion to order a hearing even where a timely request is filed. Here, the request was untimely and IBLA determined that no hearing was necessary. Again, the court will not substitute its judgment for that of agency regarding interpretation of agency policy. The court concludes there is substantial evidence that the Secretary did not abuse his discretion in determining an evidentiary hearing was unnecessary and grants summary judgment in favor of the Secretary on this issue.

IV

Powell Mountain raises two issues in its summary judgment motion. Powell Mountain claims that the IBLA erred in concluding that Catron and Molinary were not estopped from proceeding with their citizens' complaints and that the conclusions of the IBLA regarding OSM's decision not to take enforcement action were improper and based on findings not supported by substantial evidence. Given the decision to grant summary judgment in favor of the Secretary and against Catron and Molinary, the court finds it unnecessary to reach the issues put forward by Powell Mountain.

---

**6.** The court notes in passing that there are other remedies available to Catron and Molinary for damages as a result of improper or ineffective reclamation. The plaintiffs pursued such an action in federal court involving their mining rights and were awarded significant damages. *Molinary,* 892 F.Supp. at 142. They have the same opportunity here, as well as remedies under state law.

**634**

### V

For the above stated reasons, the court grants summary judgment in favor of the Secretary on all issues and declines to rule on the issues raised by Powell Mountain.

### *FINAL ORDER*

In accordance with the memorandum opinion entered this date, it is **ORDERED AND ADJUDGED** that Defendant's motion for summary judgment is granted and all other motions for summary judgment are denied. This case is ordered stricken from the docket of this court.