**Jo D. MOLINARY, Trustee of the Susan Pruitt Cloud Land Trust, Plaintiff,**

v.

**POWELL MOUNTAIN COAL COMPANY, INC., doing business as Wax–Coal Company, Defendant.**

**No. CIV.A. 91–0007–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Sept. 21, 1999.

Daniel Robert Bieger, Copeland, Molinary & Bieger, P.C., Abingdon, VA, Walton Davis Morris, Jr., Charlottesville, VA, for Jo D. Molinary, Trustee of the Susan Pruitt Cloud Land Trust, plaintiffs.

Timothy Ward Gresham, Penn, Stuart & Eskridge, Abingdon, VA, Stephen M. Hodges, Penn, Stuart & Eskridge, Abingdon, VA, for Powell Mountain Coal Company, Inc. dba Wax Coal Company, defendant.

## MEMORANDUM OPINION

WILSON, Chief Judge.

This matter is before the court on a motion by plaintiff Jo D. Molinary ("Molinary") for relief from final judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Molinary requests that the court reopen three claims which this court disposed of in a Final Order entered February 7, 1996. For reasons stated below, the court denies Molinary's motion.

### I.

This lawsuit originated in January 1991 as a class action citizen suit against Powell Mountain Coal Company, Inc. ("Powell Mountain"), for damages arising from the alleged unlawful mining of coal on a fifty-acre tract of land (the "Pruitt Tract") in Lee County, Virginia. Molinary is the trustee for the Susan Pruitt Cloud Land Trust (the "Pruitt Heirs"), a class of persons who, in 1990, owned over a 99% undivided interest in the surface estate of the Pruitt Tract. At the time, Powell Mountain owned an approximately .14% undivided interest in the surface estate of the Pruitt Tract, in addition to complete ownership of mineral rights below the surface. The Pruitt Heirs utilized the Pruitt Tract primarily for recreational purposes—hunting, hiking, camping, and the like.

In February 1990, Powell Mountain applied to the Virginia Division of Mined Land Reclamation (DMLR) for a permit to conduct surface coal mining operations in an area that included part of the Pruitt Tract. In its application, Powell Mountain listed "Pruitt Heirs" as the surface owners of the tract but failed to list each owner individually. Powell Mountain listed itself as the sole owner of the mineral rights and informed the DMLR that it had obtained a legal opinion that no lease to extract the coal by the auger mining method was required from the other owners of the surface estate. Without further information, the DMLR issued the permit. Powell Mountain then extracted 4423.51 tons of

coal from the three-acre tract by the auger mining method. Powell Mountain sold the coal for $190,122.46, clearing $35,909.05 in profit.

After receiving complaints about the permit's issuance, the DMLR determined that Powell Mountain's permit application did not comply with certain state permitting regulations. Consequently, the DMLR revoked Powell Mountain's permit, issued a cessation order, and ordered Powell Mountain to reclaim the three-acre tract. Subsequently, the Pruitt Heirs filed suit in this court.

The Pruitt Heirs' Second Amended Complaint alleged six counts. In Count I, the Pruitt Heirs alleged that Powell Mountain's failure to comply with Virginia's permitting regulations misled the DMLR into issuing the permit, which in turn led to the mining of the Pruitt Tract. The Pruitt Heirs brought Count I pursuant to the citizen suit provision of the Surface Mining Control Reclamation Act (SMCRA), 30 U.S.C. § 1270(f) (West 1999), seeking the entire proceeds of Powell Mountain's sale of the coal as damages. Count I included a claim alleging that Powell Mountain's conduct in auger mining the Pruitt Tract without the consent of the class members implied a contract under the SMCRA between Powell Mountain and the class members for surface coal extraction rights. Counts II and V set out independent but overlapping claims under federal and state law, respectively, for Powell Mountain's failure to reclaim the Pruitt Tract to a condition suitable for its prior recreational purposes. Count III alleged precisely the same implied contract theory as alleged in Count I, only under Virginia law. As in Count I, the Pruitt Heirs sought in Count III the entire proceeds of Powell Mountain's sale of the coal as damages. Count IV asserted a claim for wheelage royalties

on coal mined from other lands and hauled across the Pruitt Tract. Finally, Count VI sought a declaratory judgment that "Powell Mountain may not lawfully obtain a coal surface mining permit for the Pruitt Tract in the future without the consent of every surface owner." (Second Amen. Compl., ¶ 75).

On the eve of trial, Molinary agreed to withdraw class claims for damages to the surface estate and to pursue reclamation through the administrative process. However, Molinary did not move to dismiss the reclamation claims stated in Counts II and V of the complaint. The court subsequently proceeded to trial. After taking evidence, the court submitted to the jury a single interrogatory to determine whether Powell Mountain's regulatory violations were wilful, reckless, or grossly negligent.[1] Prior to submitting the interrogatory to the jury, the court offered both Molinary and Powell Mountain an opportunity to object to the interrogatory. Molinary objected on one ground: that the interrogatory did not instruct the jurors to disregard the legal opinion obtained by Powell Mountain prior to mining the coal. (*See* Trial Tr. Supp. at 3). The court overruled Molinary's objection, and the jury subsequently returned a verdict in Molinary's favor.

After the trial, the court conducted a post-trial hearing in which the court sought to resolve all remaining issues. At that time, Molinary raised her Count VI claim for declaratory relief, and the court declined to grant the judgment. Molinary did not raise any other claims at that time. Molinary also submitted, with the court's permission, a post-trial memorandum, in which Molinary addressed the issue of damages but did not mention Counts III,

---

1. The question encompassed by the special interrogatory was the only liability issue under Count I disputed by the parties. The interrogatory was worded as follows: "has the plaintiff proven by a preponderance of the evidence that the defendant acted wilfully, recklessly, or that the defendant was grossly negligent in failing in its permit application to list all the Pruitt Heirs, and in failing to supply documentation that had the legal authority to extract coal from the Pruitt Heirs' tract by the augur mining method." (Supplement to Transcript of Trial, August 30, 1994, at 1).

V, and VI. (*See* The Trustee's Post–Trial Memorandum, filed September 22, 1994).

The court awarded the class $190,622.46 in damages, an amount equal to the gross sales price of the coal. The court hoped that the ruling would "discourage the kind of intentional conduct that occurred in the present case ...." *Molinary v. Powell Mountain Coal Co.*, 892 F.Supp. 136, 141 (W.D.Va.1995) ("*Molinary I*"). The court also awarded the class $91,644.92 in costs and attorney's fees. In its Final Order, the court entered judgment in Molinary's favor for Count I, and in Powell Mountain's favor for Counts III, IV, V, and VI.

Powell Mountain appealed, and the Court of Appeals for the Fourth Circuit affirmed in part, vacated in part, and remanded with instructions to this court to enter summary judgment in favor of Powell Mountain. *Molinary v. Powell Mountain Coal Co.*, 125 F.3d 231 (4th Cir.1997) (*Molinary I*). Despite the fact that Counts III and VI were never at issue in the Fourth Circuit's decision, Molinary argued on remand that this court should construe the Fourth Circuit's decision as vacating this court's decision in *Molinary I* entirely, but only directing entry of final judgment in favor of Powell Mountain on Count I, thus allowing the Pruitt Heirs to relitigate Counts III and VI. This court rejected Molinary's argument and entered final judgment in favor of Powell Mountain on Count I. The Pruitt Heirs appealed, and the Fourth Circuit affirmed this court's judgment. *See Molinary v. Powell Mountain Coal Co.*, 173 F.3d 920 (1999) (*Molinary II*).

After *Molinary I* became final, the Pruitt Heirs sold their entire interest in the Pruitt Tract to Powell Mountain and its affiliates. The Pruitt Heirs now return once again to this court, and request that the court relieve them of the court's final judgment as to Counts III, V, and VI, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

## II.

■ Molinary first contends that the court must grant relief under Rule 60(b)(4) for Counts III and V. Rule 60(b)(4) states that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [if] ... the judgment is void ...." Fed.R.Civ.P. 60(b)(4). A judgment "is not void merely because it is erroneous. A judgment is void only if the court that rendered it lacked jurisdiction of subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871 (4th Cir.1999) (quotations omitted). Rule 60(b)(4) is not subject to any time limitation, and the court has no discretion in determining whether to grant or deny a Rule 60(b)(4) motion—if the judgment is void, the court must grant relief. *See Orner v. Shalala*, 30 F.3d 1307, 1310 (10th Cir.1994); *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir.1993); *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir.1992); *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988); *Rodd v. Region Constr. Co.*, 783 F.2d 89, 91 (7th Cir.1986) ("[T]he reasonable time criterion of Rule 60(b) as it relates to void judgments means no time limit.").

Molinary claims that the court's judgments on Counts III and V are void because those claims were moot when the court entered judgment on them. Alternately, Molinary contends that the judgments are void because the court deprived her of procedural due process rights by denying her an opportunity to be heard on Counts III and V, and rendering judgment on Counts III and V without submitting findings of fact and conclusions of law. The court finds that Counts III and V were not moot when the court in *Molinary I* issued its Final Order, and that Molinary was afforded all of the process due to her under the Constitution. Consequently, the

court rejects Molinary's Rule 60(b)(4) challenge.

### A. Mootness

Molinary presents different mootness arguments for Count III and Count V. With regard to Count III, Molinary contends that when the court in *Molinary I* granted relief on Count I, it could not grant further relief for Count III, since any relief the court could have issued on Count III would have overlapped with the relief awarded on Count I; therefore, Count III became moot and beyond the court's jurisdiction.[2] In making this argument, Molinary exhibits a fundamental misunderstanding of the meaning of constitutional mootness.

■ For purposes of jurisdiction, the doctrine of mootness has been expressed as a component of the Cases and Controversy requirement of Article III of the United States Constitution. The Supreme Court has held that:

> Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases and controversies .... The case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. To sustain jurisdiction ... [t]he parties must continue to have a "personal stake" in the outcome of the lawsuit.

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990); *see also Bahnmiller v. Derwinski*, 923 F.2d 1085, 1088 (4th Cir.1991) (to remain a justiciable controversy, a suit "must remain alive throughout the course of the litigation"). There are essentially two ways in which a case can become moot for constitutional purposes. First, a case can become constitutionally moot when some material fact has changed during litigation which terminates the controversy between the parties. In *Bahnmiller*, for example, the plaintiff challenged an administrative policy issued by the Secretary of Veteran Affairs, and the plaintiff lost standing after the Secretary withdrew the policy. Second, a case can become moot when a plaintiff brings a claim under statutory law, and during the course of the litigation the legislature amends the law in such a way that deprives the plaintiff of the foundation for her claim. *See* Wright & Miller, Federal Practice and Procedure § 3533 (2d Ed.1991).

■ Neither of these situations are present here. Molinary essentially seeks to extend the notion of "constitutional mootness" to include situations where no underlying facts and no law have changed, but where the plaintiff pleads alternative grounds for relief, and one is either granted or rejected. There is simply no support for this proposition.

Molinary is correct in a semantic sense that Count III became "moot" after the court's judgment in Count I. Courts that find a case controlled by one set of issues rather frequently say that this disposition "moots" the other issues. However, the courts who make this assertion are not making a constitutional ruling. They are, rather, using the term "moot" informally to identify situations where judgment on one claim grants the same relief that is requested on an alternative, undecided claim. *See id.* A case is not moot for purposes of standing if an alternative ground for judgment has been disposed of in a plaintiff's favor. As this case clearly indicates, a plaintiff's stake in alternative grounds for judgment is high even if the plaintiff prevails on the first ground—in the event that one is appealed and re-

---

**2.** Powell Mountain responds to Molinary's mootness claim in part by asserting that Molinary waived any mootness challenge by failing to assert that challenge on appeal. While the court finds Molinary's mootness challenge deficient in other respects, Molinary can raise her mootness challenge at the present juncture in the lawsuit, since challenges under Rule 60(b)(4) for lack of subject matter jurisdiction may be raised at any time. *See V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 n. 9 (10th Cir.1979) (if a judgment lacks subject matter jurisdiction, "it is a nullity from the outset and any 60(b)(4) motion for relief is therefore filed within a reasonable time"); 11 Wright & Miller, Federal Practice and Procedure § 2862 (2d ed.1991).

versed, the plaintiff will still gain judgment if the other is preserved. As the court discusses in further detail below, Molinary clearly had the opportunity to protect her award in Count I by pursuing Count III at trial and/or cross-appealing this court's judgment in Count III.

■ Regarding Count V, Molinary claims that she withdrew Count V prior to trial and, therefore, any later ruling on that claim was moot. On the eve of trial, Molinary decided to abandon Count V in order to pursue reclamation through the administrative process. *See Molinary I,* 892 F.Supp. at 141. However, at no point at trial did Molinary formally withdraw or move to dismiss Count V. In order to withdraw a claim from a suit in federal court, a party must do more than simply announce that they are no longer pursuing that claim. Rather, they must exercise the procedures for dismissal set forth in the Federal Rules of Civil Procedure.

Parties in federal court do not enjoy an unqualified right to withdraw claims. Rather, "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action." Fed.R.Civ.P. 41(a)(1). After the time for withdrawal as of right has passed, a party may remove a claim from the lawsuit only by filing a motion to dismiss without prejudice. *See* Fed.R.Civ.P. 41(a)(2) ("Except as provided in [Rule 41(a)(1) ], an action shall not be dismissed

at the plaintiff's insistence save upon order of the court and upon such terms and conditions as the court deems proper."). A motion to dismiss without prejudice can be granted only if doing so does not result in legal prejudice to the defendant. *See Andes v. Versant Corp.,* 788 F.2d 1033, 1036 (4th Cir.1986).

Molinary did not abandon Count V until just prior to trial, after Powell Mountain had filed an answer to her complaint. *See Molinary I,* 892 F.Supp. at 141. Thus, even if she had filed a notice of dismissal pursuant to Rule 41(a)(1)(i) (which she did not), it would not have been valid. Further, Molinary never obtained a stipulation of dismissal from Powell Mountain pursuant to Rule 41(a)(1)(ii), and never filed a motion to dismiss without prejudice pursuant to Rule 41(a)(2). Because Molinary did not follow these procedures, Count V remained a live element of the lawsuit, notwithstanding Molinary's failure to pursue that claim through the course of the trial. The claim was therefore not moot, and not "void" for purposes of Rule 60(b)(4), when the court entered its Final Order.[3]

### B. Due Process

Molinary also claims that the Court must grant relief under Rule 60(b)(4) because the court's grant of judgment to Powell Mountain on Counts III and V constituted a deprivation of Molinary's due process rights. Specifically, Molinary contends that she was not provided with an opportunity to be heard on Counts III and V, and that the court failed to provide findings of fact and conclusions of law for those counts, in accordance with Rule 52 of

---

**3.** The court also notes that Molinary has had ample opportunity to pursue her reclamation claims in other forums, and has taken full advantage of these opportunities. Molinary filed an administrative claim with the Office of Surface Mining ("OSM"), which she then appealed to the Interior Board of Land Appeals ("IBLA"), which in turn she appealed to this court. *See Catron v. Babbitt,* 955 F.Supp. 627 (W.D.Va.1997). Unsatisfied with this court's handling of the reclamation issues, Molinary appealed the *Catron* judgment to the Fourth Circuit, which dismissed the appeal.

*See Catron v. Babbitt,* No. 97–1449, CA–96–1–B (4th Cir. September 19, 1997). Molinary then filed a petition for rehearing, which the Fourth Circuit granted. The Fourth Circuit vacated its September 19, 1997, order and this court's and the IBLA's final judgments, and dismissed the suit for lack of standing, since during the *Catron* appeal, Powell Mountain and an affiliate acquired 100% ownership of the surface estate of the Pruitt Tract. *See Catron v. Babbitt,* No. 97–1449, CA–96–1–B (4th Cir. December 22, 1997).

the Federal Rules of Civil Procedure. The court finds that (1) Molinary has waived any due process challenge she might have had by failing to raise these issues at trial and on appeal, and (2) even if Molinary had been diligent at trial and appeal, none of Molinary's due process rights were in fact violated.

■ Regardless of whether Molinary's due process rights were in fact violated at trial, the fact that Molinary failed to assert her rights at trial or on appeal constitutes a waiver of those rights. Indeed, to grant relief under Rule 60(b) under such circumstances would constitute an abuse of this court's discretion. *See Eberhardt v. Integrated Design & Construction, Inc.*, 167 F.3d 861 (4th Cir.1999). In *Eberhardt*, a former employee brought a False Claims Act action against his former employer in the employer's individual and corporate capacity. The plaintiff received a jury verdict in his favor on the claim that his former employer discriminated against him in violation of the whistleblower provision of the False Claims Act. *Id.* at 864. Two months later, the employer brought a Rule 60(b)(4) motion, asserting that the False Claims Act does not authorize relief against him in his individual capacity, and that therefore his due process rights were violated when judgment was granted against him. *Id.* at 871. The Court of Appeals for the Fourth Circuit reversed the district court's granting of the employer's Rule 60(b)(4) motion, in part on the ground that the employer had ample opportunity to move for dismissal during trial under Rule 12(b)(6), yet failed

to exercise that right. The employer's "due process rights [were] waived by a knowing failure to assert them." *Id. (citing Pitts v. Board of Educ.*, 869 F.2d 555, 557 (10th Cir.1989)).

■ The present case is essentially the same as *Eberhardt*. When this court rendered judgment against Molinary on her state law claims, Molinary could have protected her state law claims by moving the court to amend its final judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure. If the court rejected her Rule 59 motion, Molinary could have filed a timely appeal and raised her due process challenges there. Alternately, at any stage in the litigation Molinary could have moved to dismiss her state law claims without prejudice pursuant to Rule 41. In fact, Molinary did nothing through the course of the litigation—prior to the this motion, which comes over three years after the court granted judgment against her—to preserve her state law claims or assert her due process rights. A Rule 60(b)(4) motion cannot serve as a substitute for these more timely procedures. *See, e.g., Baumlin & Ernst, Ltd. v. Gemini, Ltd.*, 637 F.2d 238, 242 (4th Cir.1980) ("The judgment, therefore, may, at most, have been erroneous, but any error, if it indeed existed, could have been attacked on appeal."). Molinary's failure to preserve her due process rights at trial or through timely appeal constitutes a waiver of those rights; in such circumstances, granting Molinary's Rule 60(b)(4) motion would constitute an abuse of this court's discretion. *See Eberhardt*, 167 F.3d at 871.[4]

---

4. Molinary contends that she lacked standing to appeal this court's judgment on Count III and VI in light of the fact that the court's judgment on Count I afforded her all of the relief that she could have received under the alternative counts. To support her position, Molinary cites several cases which set forth the doctrine that non-aggrieved parties lack standing to appeal judgments in their favor. *See Exxon Chem. Patents, Inc. v. The Lubrizol Corp.*, 137 F.3d 1475, 1478–79 (Fed.Cir.1998); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 954 (Fed.Cir.1997); *Resolution Trust Corp. v. Maplewood Investments*, 31 F.3d 1276, 1278

(4th Cir.1994); *In re Sims*, 994 F.2d 210, 213 (5th Cir.1993); *Allstate Ins. Co. v. A.A. McNamara & Sons, Inc.*, 1 F.3d 133, 137 (2nd Cir.1993); *Armotek Indus. v. Employers Ins. of Wausau*, 952 F.2d 756, 758 (3rd Cir.1991).

The doctrine of non-aggrieved parties does not excuse Molinary's failure to raise Counts III and VI on appeal. That doctrine essentially contains two elements. First, it prohibits parties who have prevailed on a particular count, but who nevertheless wish to appeal that count to alter the reasons underlying the judgment *in that count*, from bringing such an appeal. *See Allstate*, 1 F.3d at 137 ("The

■ Beyond Molinary's failure to adequately preserve her due process claims, Molinary's Rule 60(b)(4) claim also fails because none of Molinary's due process rights were violated in *Molinary I*. "Ordinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir.1996) (quoting *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027 (5th Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983)). *See also BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 n. 22, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases ....") (quotations omitted); *NLRB v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 351, 58 S.Ct. 904, 82 L.Ed. 1381 (1938) ("Due process of law guarantees no particular form of procedure; it protects substantial rights."). Molinary contends that her due process rights were violated be-

cause the court did not afford her an opportunity to be heard on Counts III and V, and because the court rendered judgment against her on those counts without submitting findings of fact or conclusions of law. The court disagrees.

■ The court in *Molinary I* offered Molinary opportunities to be heard on Counts III and V throughout the trial process. When the court in *Molinary I* presented the special interrogatory to the jury, which addressed only Count I of Molinary's complaint, Molinary could have objected to the interrogatory on the ground that it did not encapsulate other claims which she was pursuing. Molinary did not, however, make such an objection.[5] After trial, the court held a post-trial hearing, the purpose of which was, in the court's words, to "totally resolve the issues" and bring the suit to a conclusion. (Transcript of Post–Trial Hearing, July 6, 1995, at 21). At that hearing, Molinary was again afforded an opportunity to bring to the court's attention any remaining issues that she desired to pursue. In fact, Molinary did take that opportunity to ar-

district court entered a declaratory judgment in Allstate's favor pursuant to the court's decision that the Policy was null and void. Allstate is not urging that we alter the judgment in any way, but rather that we alter the reasons underlying it."). Second, it eliminates the formality of cross-appeal for alternative grounds for judgment, but it does not prohibit non-aggrieved parties from raising their alternative grounds as a defense on appeal. *See Armotek*, 952 F.2d 756, 758 ("[appellant's] argument, if correct, would provide an alternative ground on which the district court's judgment could be affirmed. An appellant may make such an argument without filing its own appeal"); *In re Sims*, 994 F.2d at 213 ("A cross-appeal filed for the sole purpose of advancing additional arguments in support of a judgment is worse than unnecessary, because it disrupts the briefing schedule, increases the number ... of briefs, and tends to confuse the issues. Such arguments should, instead, be included in the appellee's answering brief."); 15A Wright & Miller, Federal Practice & Procedure § 3904 (2d ed.1991) ("The rule that arguments supporting the judgment as entered can be made without a cross-appeal ... is stated and applied in

many settings. Cross-appeal is unnecessary even with respect to matters that have been put aside by the district court, or matters that have been explicitly rejected by the district court.").

For the purposes of this case, the non-aggrieved party doctrine stands for the proposition that an appellee who has been denied relief at trial on an alternative ground for judgment *may* raise those alternative grounds on appeal, only within an answering brief and not as a cross-appeal. Molinary, therefore, could have raised both Counts III and VI, as well as any due process violations associated with those counts, in her answering brief before the Fourth Circuit in *Molinary I*.

5. After reading the interrogatory, the court asked specifically, "are there any objections to the instructions as given?" (Trial Tr. Supp. at 3). Molinary's counsel responded as follows: "our only problem with the instructions is that the Court has not instructed the jury to disregard the legal opinion [obtained by Powell Mountain prior to mining the coal] and the grounds for requesting such an instruction were the same as those for striking the opinion." (Trial Tr. Supp. at 3).

gue for Count VI (*See* Post Tr. Hear. Tr. at 22), but Molinary did not raise either Counts III or V. Finally, after the post-trial hearing Molinary was invited to submit, and in fact submitted, a post-trial memorandum. (*See* Post–Trial Memorandum, filed September 22, 1994). In the memorandum, Molinary assumed that Count V had been withdrawn and neglected to argue the merits of Count III.[6] Molinary could also have raised these points at any time on her own initiative. The court clearly afforded Molinary multiple opportunities to raise her state law claims, but she simply failed to take advantage of them.

Molinary's argument that the court deprived her of due process, by neglecting to provide findings of fact and conclusions of law to support its judgments in Counts III and V, likewise fails. Rule 52 of the Federal Rules of Civil Procedure provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ." Fed.R.Civ.P. 52(a). Even assuming that the court in *Molinary I* violated Rule 52(a), the court finds no support for the proposition that mere failure to submit findings of fact and conclusions of law in a civil case constitutes a violation of procedural due process. "[P]rocedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." *New York Life Ins. Co.*, 84 F.3d at 143; *see also Baumlin,* 637 F.2d at 242 ("Error . . . does not make the judgment void and, therefore, Fed.R.Civ.P. 60(b)(4) is inapplicable."). Absent a due process violation, any objection Molinary might have to the procedures in *Molinary I* falls outside the scope of Rule 60(b)(4).

In summary, Molinary's Rule 60(b)(4) motion will be denied because: (1) the court in *Molinary I* possessed subject matter jurisdiction over Counts III and V;

(2) Molinary waived any due process objection she may have had by failing to preserve her state law claims at trial and failing to raise them on appeal; and (3) this court did not violate any of Molinary's due process rights.

### III.

■ Molinary next contends that the court should grant relief from the court's judgment for Counts III and VI under either Rule 60(b)(5) or 60(b)(6). Rule 60(b) provides in relevant part that the court may grant relief from judgment if:

"(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time . . . ."

Fed.R.Civ.P. 60(b). The consideration of a motion under Rules 60(b)(5) and 60(b)(6) proceeds in two stages. First, the party seeking relief must "make a showing of timeliness, a meritorious position, lack of prejudice to the opposing party, and exceptional circumstances." *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir.1990). Only if this is done will the court consider the enumerated ground for relief. In addition, unlike Rule 60(b)(4), granting or denying motions under Rules 60(b)(5) and 60(b)(6) is ultimately left to the court's discretion. *See National Org. for Women v. Operation Rescue,* 47 F.3d 667, 669 (4th Cir.1995).

■ Molinary's request to reopen Count VI can be disposed of without even considering Rule 60(b). Since *Molinary I* was decided, the Pruitt Heirs have sold their entire interest in the Pruitt Tract to Powell Mountain and associates. See *su-*

---

**6.** With regard to Count III, Molinary stated only that "[t]he sole question left undecided with respect to Counts I and III is the measure of restitution that Powell Mountain must make for the damages it consciously committed," then proceeded to argue for damages. (Post–Trial Memorandum at 4).

*pra,* note 3. The court struggles to identify how the Pruitt Heirs now have standing to seek a declaratory judgment stating that "Powell Mountain may not lawfully obtain a coal surface mining permit for the Pruitt Heirs Tract in the future without the consent of every surface owner." (Second Amen. Compl., ¶ 75). The court, therefore, rejects Molinary's Count VI request for relief from judgment as moot for lack of standing.

 Regarding Count III, discretionary relief is not appropriate here for several reasons. First, Molinary has not met the threshold requirements of timeliness or extraordinary circumstances justifying relief. Second, Molinary's claim fails under the specific requirements of both Rules 60(b)(5) and 60(b)(6).

Under Rule 60(b), the threshold requirement of timeliness must be shown by the movant. *See Holland v. Virginia Lee Co., Inc.,* 188 F.R.D. 241, 247–248 (W.D.Va. 1999). There is no fixed time period to determine timeliness for Rule 60(b)(5) or 60(b)(6) motions. Rather, timeliness is determined by reference to the "reasonable time" language of Rule 60(b), and "will generally depend on the facts of each case." *Id. (citing United States v. Wyle,* 889 F.2d 242, 249 (9th Cir.1989)) "A major consideration will be ... whether the movant had a good reason for failing to take action sooner." *Id.*

Molinary argues that the motion is timely since, in her view, she has been pursing the merits of Count III continuously since this court's decision in *Molinary I.* It is true that immediately following the Fourth Circuit's decision in *Molinary I,* Molinary began to pursue Count III and has been diligent in that respect ever since. However, as stated before, Molinary had ample opportunity to raise or preserve Count III throughout the course of trial and on appeal in *Molinary I,* but simply failed to do so. The fact that Molinary has actively pursued Count III since *Molinary I* was returned to this court by the Fourth Circuit does not excuse her failure to pursue

the count before then. Molinary's Rule 60(b) motion is, therefore, untimely.

Molinary also has not established any "extraordinary circumstances" that would satisfy the Rule 60(b) threshold. *Aliff v. Joy Mfg. Co.,* 914 F.2d at 43. Molinary predicates her entire argument in this respect again on the presumption that she was incapable of appealing this court's judgment in *Molinary I,* which this court rejects. It is well settled that decisions made during the course of litigation "provide no basis for relief under 60(b)(6), even though with hindsight they appear wrong." *Schwartz v. United States,* 976 F.2d 213, 218 (4th Cir.1992) *(citing Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). For whatever reason, Molinary made a conscious decision not to pursue the merits of Count III or to preserve that claim for a later date. "There must be an end to litigation someday, and free, deliberate choices are not to be relieved from." *Ackermann,* 340 U.S. at 198, 71 S.Ct. 209.

Beyond the threshold requirements, Molinary fails to satisfy the specific requirements of either Rule 60(b)(5) or 60(b)(6). The application of Rule 60(b)(5) has been "limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel." *Schwartz,* 976 F.2d at 217 (citations omitted). Although Molinary did raise identical implied contract claims in Counts I and III, it is clear from both the special interrogatory submitted to the jury and the court's final opinion in *Molinary I* that the relief granted on Count I arose exclusively from Powell Mountain's permitting violations, not from Molinary's implied contract claim. *See Molinary I,* 892 F.Supp. 136 at 142 (indicating that the damages award of the entire sales price of the coal was aimed at discouraging "the kind of intentional conduct that occurred in the present case."). Further, Molinary's § 1270(f) claim did not involve the same factual elements as an implied contract claim; judgment for one

would not necessarily demand judgment for another. For instance, willfulness in violating permitting regulations was central to Molinary's § 1270(f) claim but irrelevant to the implied contract claim, whereas ownership of mineral rights would have been critical to the implied contract claim but was not a central element of the § 1270(f) claim. Consequently, the court's resolution of Count III was not "based on" the court's judgment in Count I within the meaning of Rule 60(b)(5).

Molinary's claim likewise fails under Rule 60(b)(6). Relief under Rule 60(b)(6) is limited to particular circumstances. *See Dowell v. State Farm Fire & Casualty Auto. Ins., Co.,* 993 F.2d 46, 48 (4th Cir. 1993). "As the law stands today, a court may grant a motion under Rule 60(b)(6) when the judgment was obtained by the improper conduct of the party in whose favor it was rendered or by an excusable default," *Holland,* 188 F.R.D. at 252 (*quoting United States v. Cato Bros., Inc.,* 273 F.2d 153, 157 (4th Cir.1959)), or in other "extraordinary circumstances." *Ackermann,* 340 U.S. at 199, 71 S.Ct. 209. The moving party must make a "highly convincing" case for relief, *Holland,* 188 F.R.D. at 252, *citing United States v. Cirami,* 563 F.2d 26, 32 (2d. Cir.1977), and "if the judgment in question has been executed, and thus its effects are no longer prospective, modification of the judgment under Rule 60(b)(6) normally will be unavailable." *Id.,* (*citing Ritter v. Smith,* 811 F.2d 1398, 1401–02 (11th Cir.1987)).

The fact that Molinary no longer has an interest in the Pruitt Tract, thus rendering the relief sought through this motion entirely retrospective, makes it difficult for the court to employ Rule 60(b)(6) to reopen a final judgment entered when the Pruitt Heirs had an interest in the land. *See Ritter,* 811 F.2d at 1401–02. But the clearest reason for denying Rule 60(b)(6) relief lies again in Molinary's failure to pursue Count III at trial and on appeal. "[C]ourts should not casually permit [via Rule 60(b)(6) ] the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best

case." *Cirami,* 563 F.2d at 33. Molinary has simply not made a sufficient case for relief under Rule 60(b)(6).

## IV.

When this court entered its final judgment in *Molinary I,* it meant for it to be final. At all points leading up to and including the Fourth Circuit's decision in *Molinary I,* Molinary could have acted to preserve the claims she wishes to reopen with this motion. Now, after no less than eight years of litigation, including two separate proceedings in this court and three reviews by the Fourth Circuit, Molinary wishes to begin anew, on behalf of a class of plaintiffs who no longer have even a proprietary interest in the land at issue in this case. Federal courts will simply not allow a plaintiff to pursue a case *ad infinitum,* litigating and appealing one count at a time, always leaving some issue for future consideration. For this reason, and for those detailed above, Molinary's Motion for Relief from Final Judgment is denied.

### *FINAL ORDER*

In accordance with the memorandum opinion entered this day, it is hereby **ORDERED and ADJUDGED** that Defendant Jo D. Molinary's motion for relief from final judgment is **DENIED.**

The case is **ORDERED** stricken from the docket of this court.